**CLEVELAND NEWSPAPERS, INC.,
d/b/a Cleveland Daily Banner,
Plaintiff-Appellant,**

v.

**BRADLEY COUNTY MEMORIAL HOSPITAL BOARD OF DIRECTORS,
Defendant-Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

March 31, 1981.

Certiorari Denied by Supreme Court,
June 1, 1981.

John B. Hagler, Jr., with Mobbs & Hagler, Cleveland, for plaintiff-appellant.

Mayo L. Mashburn, with Bell, Painter, McMurray, Callaway, Brown, Mashburn & Headrick, Cleveland for defendant-appellee.

OPINION

SANDERS, Judge.

The Plaintiff-Appellant, Cleveland Newspapers, Inc., filed a declaratory judgment suit against the Defendant-Appellee, Bradley County Memorial Hospital Board of Directors. It seeks determination from the court of its right under T.C.A. § 10–7–503, known as the Public Records Acts, to inspect the Defendant's payroll records.

The Bradley County Memorial Hospital came into being by virtue of Chapter 846 of

the Private Acts of 1947. The Act authorized Bradley County to issue $400,000 in revenue bonds for the erection and equipping of a hospital near Cleveland. It also named five directors to supervise construction, acquisition of a construction site, and equipping the hospital. Chapter 197 of the Private Acts of 1953 provided for the operation, management and control of the hospital by a board of directors. Since 1953 the county has issued bonds from time to time for the erection of additions to or enlargement of the physical facilities. Otherwise the hospital has been self-supporting, but it is a non-profit organization.

The hospital is operated by a board of seven directors. Three of them are appointed by the county court of Bradley County, three are appointed by the city commissioners of the City of Cleveland and one is appointed by the Bradley County Medical Society. They all serve without pay. The board of directors is vested "with full, absolute and complete authority and responsibility for the operation, management, conduct and control of the business and affairs of the hospital." The Act also provides that "the board of directors shall cause an audit to be made annually of the books and records of said hospital by a certified public accountant and reports of said audit, properly certified, shall be delivered to the county judge who shall present the same to the quarterly county court." It further provides that the directors "shall prepare and submit to the county judge . . . a summary report of the operations of said hospital for each six-month period." This, in turn, is to be submitted to the quarterly county court. The Act also provides that any profits that are left after retaining necessary operating funds shall be paid over to the trustee of Bradley County for retirement of the bonds.

Some time prior to the filing of this suit Plaintiff requested the Defendant to furnish it information as to its employees and their salaries. The request was made on the basis that the Plaintiff was entitled to the information by authority of T.C.A. § 10–7–503. The Defendant declined to furnish the information, insisting the provisions of the statute are not applicable to it. T.C.A. § 10–7–503 provides:

"RECORDS OPEN TO PUBLIC INSPECTION.—All state, county and municipal records shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any such citizen, unless otherwise provided by law or regulations made pursuant thereto."

In the case of *Nashville Memorial Hospital, Inc., v. Binkley,* Tenn., 534 S.W.2d 318, 319 (1976) Justice Brock, speaking for the Supreme Court, defined a public hospital as "an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state." The Defendant admits that within that definition it is a public hospital. It says, however, that being a public hospital does not, per se, bring it within the four corners of the statute. It contends it is not subject to the statute for two reasons: (1) It is neither a state, county nor municipality and the statute applies only to such records; and (2) The Private Act of 1953 gave absolute power to the board of directors to operate and control the hospital. This carried with it the right of the board to designate certain personnel records as confidential, which they had done, and they are not now required to reveal confidential material.

We shall consider Defendant's second insistence first. In 1953 the board of directors of the hospital applied to the Joint Commission of Accreditation of Hospitals for a survey of the hospital in order to obtain accreditation. The hospital was later accredited and has been ever since. If a hospital is not accredited it must be surveyed by the Department of Health, Education and Welfare and meet all the requirements of that department before it is eligible for such federal programs as treatment of Medicare and Medicaid patients. If accredited, however, the hospital is presumed to meet all of the necessary requirements

for federal programs. In order to be accredited the Joint Commission, among other things, required that "*written procedures shall be established for the maintenance and confidentiality of all personnel records.*" In pursuance of this requirement the board of trustees established a policy which provides "all personnel records, including wage and salary information, shall at all times be held in the strictest of confidence. . . ." T.C.A. § 10–7–504 lists a number of types of records which shall be considered confidential and are exempt from inspection under T.C.A. § 10–7–503. As pertinent here, T.C.A. § 10–7–504 provides as follows:

"CONFIDENTIAL RECORDS.—(a) The medical records of patients in state hospitals and medical facilities, and the medical records of persons receiving medical treatment, in whole or in part, at the expense of the state, shall be treated as confidential and shall not be open for inspection by members of the public. Additionally, all investigative records of the Tennessee bureau of criminal identification shall be treated as confidential and shall not be open to inspection by members of the public. . . . The records, documents and papers in the possession of the military department which involve the security of the United States and/or the state of Tennessee, including but not restricted to national guard personnel records, staff studies and investigations, shall be treated as confidential and shall not be open for inspection by members of the public.

"(b) The records of students in public educational institutions shall be treated as confidential. . . .

"(c) Any record designated 'confidential' shall be so treated by agencies in the maintenance, storage and disposition of such confidential records. These records shall be destroyed in such a manner that they cannot be read, interpreted, or reconstructed. The destruction shall be in accordance with an approved records disposition authorization from the public records commission."

Prior to 1978 T.C.A. § 10–7–504 did not contain Paragraph (c). Chapter 544 of the Public Acts of 1978 amended this section of the Code, which was then codified as Section 15–305. The Act provides:

"SECTION 1. . Tennessee Code Annotated, Section 15–305, is amended by adding a new section to read as follows:

"(3) Any record designated 'confidential' shall be so treated by agencies in the maintenance, storage and disposition of such confidential records. These records shall be destroyed in such a manner that they cannot be read, interpreted, or reconstructed. The destruction shall be in accordance with an approved records disposition authorization from the public records commission."

This is now Paragraph (c) of the Code Section referred to above.

In his determination of the case the chancellor held that the Act quoted above, along with the broad authority conferred upon the directors under the 1953 Private Act, gave the board of directors of the hospital authority to designate their personnel records confidential. He held that the language in the Act which says, "Any records designated 'confidential' shall be so treated . . . .," exempted the hospital records from inspection.

We do not so read the Act. We read the Act and the Code as now codified to say that those records which have been declared by the legislature to be confidential shall be so treated by the agencies maintaining them whether they be active or in storage and to also provide a method of destruction of such confidential records. We also read the statute to provide that only the legislature can declare certain records to be confidential. We think the power conferred upon the board of directors by the Private Act of 1953 is broad enough to give them power to designate their records confidential if they were not otherwise subject to the provisions of T.C.A. § 10–7–503, but they cannot avoid the provisions of the Code by so designating their personnel records.

This brings us to the more difficult question raised by the Defendant. Since the

records of the Defendant are neither state, county nor municipal in the literal sense of the terms, is the statute broad enough to encompass the records of a public hospital in the broader sense of the terms? This exact issue has not been before the courts of this jurisdiction before. The only case we have found or been cited to which is in point is the case of *Moberly v. Herbold-sheimer*, 276 Md. 211, 345 A.2d 855. There a hospital was incorporated by private act of the Maryland legislature. It authorized the City of Cumberland to issue bonds for the erection and equipment of a hospital. The hospital was to be run by a board of governors. It also provided that at any time there might be an amount of money in excess of the amount needed in the operation and maintenance of the hospital, such amount should be paid to the city for retirement of the bonds. Suit was filed by a newspaper reporter asking the court, under Maryland's public information act, to require the hospital to disclose the salary of the director of the hospital and the amount of fees paid to a law firm. The Maryland statute is broader than our statute in the list of institutions whose records shall be deemed to be public. It includes the records of "the State and any counties, municipalities and political subdivisions thereof and by any agencies of the State, counties, municipalities, and political subdivisions thereof, or received by them in connection with the transaction of public business, except those privileged or confidential by law." The Maryland Court of Appeals held the hospital was an agency of the City of Cumberland and its records were subject to inspection by the public.

T.C.A. § 10–7–501 provides, in part:

"REPRODUCTION OF STATE RECORDS ON FILM.—The head of any department, commission, board, or agency of the state government may cause any or all records kept by him or it to be photographed,. . . ." etc.

This section of the Code is codified along with T.C.A. § 10–7–503 under Part V—Miscellaneous Provisions. Statutes *pari materia* shall be considered together. *State ex rel. v. Louisville & N. R. Co.*, 139 Tenn. 406, 201 S.W. 738 (1917).

We, accordingly, hold that T.C.A. § 10–7–503 should be construed to be broad enough to encompass T.C.A. § 10–7–501.

Although our courts have not had occasion to deal with public hospitals on the issue before us, they have had a number of occasions to deal with them on the questions of governmental immunity. In these cases they have consistently held that where a hospital has its genesis in the state legislature, is financed by public funds, its governing board is appointed by the municipality and they serve without pay, is a non-profit organization and administers to the sick in the community it is an arm of the state and performs a governmental function. In the case of *McMahon v. Baroness Erlanger Hospital*, 43 Tenn.App. 128, 306 S.W.2d 41 (1957), the court said:

"'The duty of a municipal corporation, and this would include a county government, to conserve public health, is governmental, and is not liable to the courts for its employees while performing such duties, on the theory that the duty in regard to preventing sickness or caring for sick people is strictly a governmental function.'"

In the case of *City of Memphis v. Bettis*, Tenn., 512 S.W.2d 270 (1974), the court said, at 273:

"'The decisions are practically unanimous in holding that a municipality is not liable for the torts of its board of health or other health officers on *the theory that the duty in regard to preventing sickness or caring for sick people is strictly a governmental or public function.'* [Emphasis supplied.]"

In *Crowe v. John W. Harton Memorial Hospital*, Tenn.App., 579 S.W.2d 888 (1979), the court in addressing a medical malpractice suit against a public hospital, said:

"Although municipalities do not fall within the aegis of the sovereign immunity doctrine if they are acting in a proprietary capacity, *see Williams v. Morristown*, 32 Tenn.App. 274, 222 S.W.2d 607 (1949), they are considered arms of the State in the exercise of their governmental functions, and hence, are immune from suit.

*Scates v. Board of Commissioners*, 196 Tenn. 274, 265 S.W.2d 563 (1954)."

\* \* \* \* \* \*

"This Court affirms the *McMahon* court's conclusion that the operation of a municipal hospital is a traditional governmental function and finds that the factors used by that court are proper indices of a municipality's motives."

The Defendant hospital itself claims governmental immunity in tort actions. Since it meets all of the criteria necessary to be considered an arm of the state carrying on a governmental function, we hold its records are encompassed within the provisions of T.C.A. § 10–7–503 and are subject to public inspection.

The issues are found in favor of the Appellant. The decree of the chancellor is reversed and the case is remanded for the entry of a decree in keeping with this opinion. The cost of this appeal is taxed to the Appellee.

PARROTT, P. J., and FRANKS, J., concur.