2001 ME 59

**TOWN OF BURLINGTON**

v.

**HOSPITAL ADMINISTRATIVE DISTRICT NO. 1 et al.**

Supreme Judicial Court of Maine.

Argued Feb. 13, 2001.

Decided April 12, 2001.

Wayne R. Foote (orally), Foote & Temple, Bangor, for plaintiff.

Michael A. Duddy (orally), Kelly, Remmel & Zimmerman, Portland, Louis H. Kornreich, Gross Minsky & Mogul, P.A., Bangor, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Hospital Administrative District No. 1 (HAD # 1), Ronald Victory, Cedric Russell, and Quorum Health Resources, LLC, (collectively, the hospital parties) appeal from the judgment of the Superior Court (Penobscot County, *Hjelm, J.*) ordering them to disclose certain records to the Town of Burlington. HAD # 1 operates the Penobscot Valley Hospital in Lincoln, Maine. Victory is the chief executive officer of HAD # 1, and Russell is president of the board of HAD # 1. HAD # 1 contracts with Quorum, a Delaware corporation, to manage the hospital.

[¶ 2] The judgment was issued after trial of two consolidated actions. The first was brought by the Town, pursuant to Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. § 409 (1989), seeking disclosure of certain records from the hospital parties. The second is a declaratory judgment action by HAD # 1 against Ronald Minott, a selectman of the Town, seeking a declaration as to whether it is required to produce the documents requested by the Town. The Superior Court concluded that FOAA and section 10–A (P.L.1993, ch. 707, § S–1) of the enabling legislation for HAD # 1 require the hospital parties to disclose the requested information. The hospital parties contend that FOAA is not applicable because HAD # 1 is not a public agency or political subdivision; the requested documents are not public records; and the trade secret exception of FOAA exempts the disclosure. The hospital parties further argue that section 10–A of the enabling legislation is unconstitutional. We agree with the Superior Court that the

hospital parties are required to disclose the records requested by the Town, and we affirm.

## I. BACKGROUND

[¶ 3] The Legislature created HAD # 1 in 1967 by a private and special law, P. & S.L.1967, ch. 58. This enabling legislation provides that the inhabitants of fourteen towns "are constituted and confirmed a body politic and corporate ... in order to provide for the health, welfare and public benefit of the inhabitants of the district." P. & S.L.1999, ch. 84, § A–1, *repealing and replacing* P. & S.L.1967, ch. 58, § 1.[1] The law further states that "[t]he hospital district shall maintain and operate a hospital or critical access system ... and generally provide for the health, welfare and public benefit of the inhabitants of the district." *Id.* HAD # 1 owns and operates Penobscot Valley Hospital, a small hospital offering acute care, diagnostic services, and an ambulance service. Quorum manages HAD # 1 under a management services agreement, and it employs Victory.

[¶ 4] HAD # 1 is governed by a board of directors who are elected by the voters in the towns in the district. *Id.* § A–2, *repealing and replacing* P. & S.L.1967, ch. 58, § 2. When there is a vacancy on the board the municipal officers of the town in which the vacancy occurred appoint a member. *Id.* The enabling legislation declares that HAD # 1 is a quasi-municipal corporation for purposes of 30–A M.R.S.A. § 5701 (1996). *Id.* § A–5, *amending* P. & S.L.1967, ch. 58, § 3. Section 5701 pro-

---

1. As originally enacted, the private and special law stated "[t]he hospital administrative district shall have any power or powers, privileges or authority exercised or capable of exercise by a public agency of this State." P. & S.L.1967, ch. 58, § 1. Shortly after enactment, a 1967 amendment to the law, P. & S.L.1967, ch. 211, repealed the prior law in its entirety, including the language authorizing HAD # 1 to exercise the powers and privileges of a public agency; modified and added language; and re-enacted the enabling charter. The enabling legislation has been amended many times since then.

vides that the property of residents located within the boundaries of a quasi-municipal corporation can be taken to pay any debt of the corporation.[2] *See Casco N. Bank v. Bd. of Trs. of Van Buren Hosp. Dist.,* 601 A.2d 1085, 1086 n. 1, 1088 (Me.1992) (stating that judgment creditor of hospital was entitled to execute on property within Van Buren under 30–A M.R.S.A. § 5701 because hospital district's enabling act declared that the district was a "quasi-municipal corporation").[3]

[¶ 5] HAD # 1's enabling legislation gives it the authority to issue bonds. *Id.* § A–3, *amending* P. & S.L.1967, ch. 58, § 3. When the directors of HAD # 1 authorize the issuance of any bonds, the inhabitants of the towns in the district are to be notified of the vote authorizing the bonds through publication in a newspaper with circulation in the district. *Id.* § A–7, *repealing and replacing* P. & S.L.1967, ch. 58, § 4. Ten percent or more of the voters may request that the bond question be submitted to the voters of the district, in which event a special meeting of voters must be held. *Id.* The enabling legislation also gives HAD # 1 the ability to obtain money through taxation. *Id.* § A–11, *amending* P. & S.L.1967, ch. 58, § 9. The directors are given the same authority to collect district taxes as county officials have to collect county taxes. *Id.* HAD # 1 has issued bonds, but it has never taxed the communities within its district. HAD # 1 obtains its operating revenues from the sale of services, charges to patients, vending machines, and donations.

[¶ 6] HAD # 1 is required to produce an annual written report to the inhabitants of the district "showing the financial condition of the district and other matters pertaining to the district and showing the inhabitants of the district how said directors are fulfilling the duties and obligations of the respective trusts." *Id.* Upon dissolution of HAD # 1, all of its property is to be liquidated and the proceeds distributed to the towns in the district. P. & S.L.1967, ch. 211, § 11. HAD # 1 is a "political subdivision" for purposes of the Maine Tort Claims Act, 14 M.R.S.A § 8102(3) (Supp.2000), which means that it has the same immunity from tort claims as municipalities.[4]

[¶ 7] In 1993 the Legislature amended the enabling legislation of HAD # 1 by adding a new section:

**Sec. 10–A. Public records.** The administrative records of the district, including the financial and compensation records of any agent employed by, under contract with or utilized in any other managerial capacity by, the district to administer that district, are public records within the meaning of the Maine Revised Statutes, Title 1, chapter 13.

P.L.1993, ch. 707, § S–1. The statutory reference in section 10–A is to FOAA. HAD # 1 claims that it was not aware of section 10–A until approximately five years after its enactment.

[¶ 8] In the spring of 1999, the Town requested certain financial information from HAD # 1. In response to the request, HAD # 1 provided information re-

---

**2.** Section 5701 states in relevant part: "The personal property of the residents and the real estate within the boundaries of a municipality, village or other quasi-municipal corporation may be taken to pay any debt due from the body corporate."

**3.** The Van Buren Hospital District was established by the Legislature under an enabling

act similar to that of HAD # 1. P. & S.L. 1955, ch. 54.

**4.** It is also a political subdivision for purposes of participation in public self-funded insurance pools. 30–A M.R.S.A. § 2252 (Supp. 2000).

garding outstanding bonds but did not provide other information. The requests that remain unsatisfied are for the contract between HAD # 1 and Quorum and for the 1998 compensation records for Victory and the hospital's chief financial officer, also a Quorum employee.

[¶ 9] Because the Town would make the records available to the public once it obtained them, the hospital parties do not want to disclose the records. They claim that the Penobscot Valley Hospital competes for patients and personnel from surrounding hospitals. They argue that the compensation of management employees must be kept confidential because release of the records would damage their ability to compete and effectively manage the hospital.

[¶ 10] The Superior Court found that legislation proposed in 1999 prompted the Town to seek the information from the hospital parties. The proposed legislation would have increased the bonding authority of HAD # 1, changed the manner of issuing bonds, and amended the administrative framework. The legislation, however, was not enacted.

[¶ 11] In its thorough decision, the Superior Court ruled that section 10–A of HAD # 1's enabling legislation made the documents requested by the Town "public records" within the meaning of FOAA.[5] The Superior Court rejected the hospital parties' argument that the records are "trade secrets" exempted from disclosure by 1 M.R.S.A. § 402(3)(B) (Supp.2000). Furthermore, the court concluded that section 10–A does not violate the Maine Constitution.[6]

## II. APPLICABILITY OF FOAA

[¶ 12] This case involves the construction of two statutory schemes. Statutory construction is an issue of law; therefore, we review the Superior Court's construction of the statutes de novo. *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 8, 754 A.2d 353, 356.

[¶ 13] The first statutory scheme at issue is FOAA. FOAA mandates a liberal construction "to promote its underlying purposes and policies ...." 1 M.R.S.A. § 401 (1989). The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public. *Id.* The burden of proof is on the agency or political subdivision to establish just and proper cause for the denial of a FOAA request. *Springfield Terminal*, 2000 ME 126, ¶ 9, 754 A.2d at 356; *see also* 1 M.R.S.A. § 409(1) (1989).

[¶ 14] FOAA provides that every person has the right to inspect and copy any public record. 1 M.R.S.A. § 408 (1989). FOAA defines "public record" as:

> [A]ny written [or] printed ... matter ... that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, ... and has been received or prepared for use in connection with the transaction of public or governmental business ....

*Id.* § 402(3) (Supp.2000). To determine whether the requested documents are public records we first look to whether HAD # 1 is an agency or political subdivision.[7]

---

5. During trial the parties stipulated that if the court ordered HAD # 1 to disclose the records, Quorum would comply with regard to the documents in its possession.

6. The hospital parties did not argue that section 10–A violates the federal constitution.

7. In addition to the definition of "public record," the definitional section of FOAA lists various boards, agencies and other entities

Because the definitional provisions of FOAA do not explicitly state that hospital districts come within its coverage, we turn to the second statutory scheme at issue in the case, the enabling statute for HAD # 1, to glean whether it provides that HAD # 1 is an agency or political subdivision.

[¶ 15] We have recited at length the authority given to HAD # 1 in the enabling legislation. On the basis of the burdens and duties granted to HAD # 1 by the Maine Legislature, we conclude that HAD # 1 functions as a political subdivision because it has many of the same characteristics of a political subdivision. It is a "body politic" and a creature of the Legislature. We found the term "body politic and corporate" to be significant in determining that a transit district is a political subdivision for purposes of the Maine Tort Claims Act. *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 418 (Me.1987). HAD # 1 is charged with carrying out a public purpose, that is, providing for the health care of the inhabitants of the district. It has the power to raise revenue through the issuance of bonds and

levying taxes. The towns in the district are responsible for the debts of the district. HAD # 1 is governed by a board of directors elected by the qualified voters of the towns in the district. Upon dissolution of the district, its assets revert to the towns. The significant powers and duties granted to HAD # 1 by the Legislature are characteristics generally reserved for political subdivisions.

[¶ 16] When determining whether an entity is a public agency or body for purposes of public disclosure laws, other jurisdictions have looked to the function that the entity performs. *See, e.g., Conn. Humane Soc'y v. Freedom of Info. Comm'n*, 218 Conn. 757, 591 A.2d 395, 398 (1991) (holding that humane society is not equivalent of public agency); *Mem'l Hosp.-West Volusia, Inc. v. News–Journal Corp.*, 729 So.2d 373, 380 (Fla.1999) (holding hospital system functioned as public agency);[8] *News & Observer Publ'g Co. v. Wake County Hosp. Sys., Inc.*, 55 N.C.App. 1, 284 S.E.2d 542, 549 (1981) (holding expense and other records of hospital subject to disclosure);[9] *Cleveland*

whose proceedings must be open to the public. 1 M.R.S.A. § 402(2) (Supp.2000). Although the list of these entities is not directly applicable to this case because this case concerns records, not proceedings, the list is illustrative of the breadth of organizations covered by FOAA. Subsection 402(2)(C) includes "[a]ny board, commission, agency or authority of any county, municipality, school district or any regional or other political or administrative subdivision." *See Lewiston Daily Sun, Inc. v. City of Auburn*, 544 A.2d 335, 336–38 (Me.1988) (holding that a municipal committee comes within FOAA even though "committee" is not included in list in § 402(2)).

8. In *Memorial Hospital–West Volusia, Inc.*, the Florida Supreme Court relied upon the following facts in concluding that the hospital system functioned as a public entity: (1) the hospital's facilities were transferred to it by the West Volusia Hospital Authority which

was created by the Florida Legislature; (2) the Authority had the power to construct a hospital; (3) it had the ability to issue bonds and levy taxes; (4) the Authority and a private hospital corporation established the entity at issue and the Authority leased the hospital facilities to the entity. *Mem'l Hosp.-West Volusia, Inc. v. News–Journal Corp.*, 729 So.2d 373, 377–79 (Fla.1999).

9. In *News & Observer Publishing*, county commissioners created the Wake County Hospital Authority to establish a hospital. Later, the commissioners converted the Authority to the non-profit Wake County Hospital System and leased the hospital facilities to the System. In finding the System to be a public agency or subdivision, the North Carolina Court of Appeals relied upon the following: (1) upon dissolution, the System's assets would be transferred to the county; (2) the commissioners retained the right to approve the Sys-

*Newspapers, Inc. v. Bradley County Mem'l Hosp. Bd. of Dirs.*, 621 S.W.2d 763, 766 (Tenn.Ct.App.1981) (holding payroll records of hospital created by private legislation subject to disclosure).[10] Factors which courts generally consider include: (1) whether the entity is performing a governmental function; (2) whether the funding of the entity is governmental; (3) the extent of governmental involvement or control; and (4) whether the entity was created by private or legislative action. *Conn. Humane Soc'y*, 591 A.2d at 397. *See also Telford v. Thurston County Bd. of Comm'rs*, 95 Wash.App. 149, 974 P.2d 886, 893–95 (1999) and cases cited therein. The courts do not require that an entity conform to all factors, but that the factors be considered and weighed.[11] *Conn. Humane Soc'y*, 591 A.2d at 397; *Telford*, 974 P.2d at 894.

[¶ 17] What the above-cited cases have in common is an inspection of the functions of the entity under examination and a determination of whether, on balance, the entity functions as a public agency. Our review of the functions of HAD # 1 convinces us that it functions as a political subdivision. First, it performs what has been viewed as a governmental function, that of providing health care. Second, although tax-generated funds are not cur-rently used to finance the operations of HAD # 1, it has issued bonds under its legislative authority, and it has the power to tax. Furthermore, the towns in the district are ultimately responsible for the debts of HAD # 1, and its assets will revert to the towns upon dissolution. Third, the control of HAD # 1 is in the hands of citizens elected from each town in the district. The number of directors and manner of election is directed by statute. Finally, it was created by the Maine Legislature. Because HAD # 1 functions as a political subdivision, we conclude that it meets the definition of "political subdivision" in FOAA.

■ [¶ 18] Having concluded that HAD # 1 is a political subdivision for the purposes of FOAA, we next determine whether the records requested from HAD # 1 by the Town come within the definition of "public records" in section 402(3) of FOAA. Records that are "received or prepared for use in connection with the transaction of public or governmental business" are public records. 1 M.R.S.A. § 402(3). We conclude that the contract with Quorum is a document connected with public business; the contract relates to the management of a hospital which was constructed and is maintained for the benefit of the public with the use of fund-raising authority

---

tem's budget; (3) the county could audit the System; (4) the System could issue bonds; and (5) the lease of the facilities to the System was $1.00 per year. *News & Observer Publ'g Co. v. Wake County Hosp. Sys., Inc.*, 55 N.C.App. 1, 284 S.E.2d 542, 544–45 (1981).

**10.** In *Cleveland Newspapers*, the hospital was created by state legislation which authorized the issuance of bonds; bonds had been issued, although the hospital was now self-supporting; the board of directors served without pay and a majority were named by city and county commissioners; annual audits and reports were submitted to the county court; and the hospital claimed governmental immunity in tort actions. *Cleveland Newspapers,*

*Inc. v. Bradley County Mem'l Hosp. Bd. of Dirs.*, 621 S.W.2d 763, 764 (Tenn.Ct.App. 1981). *But see Memphis Publ'g Co. v. Shelby County Health Care Corp.*, 799 S.W.2d 225, 228–30 (Tenn.Ct.App.1990) (holding hospital and health care corporation were not subject to disclosure law; distinguishing *Bradley County Memorial Hospital* on grounds that Bradley Hospital was a creature of state legislation and immune in tort actions).

**11.** Some courts use additional factors such as the level of public funding, *see Mem'l Hosp.-West*, 729 So.2d at 376 n. 5, and status of the entity's employees, *see Marks v. McKenzie High Sch. Fact-Finding Team*, 319 Or. 451, 878 P.2d 417, 423 (1994).

granted by the Legislature, which authority is exercised by elected citizens. For the same reason, we conclude that the compensation records of the management employees are records prepared for public business.

[¶ 19] Although section 10–A, added to HAD # 1's enabling legislation, defines HAD # 1's administrative records as "public records" for purposes of FOAA, we do not rely on it but instead rely upon the general legislation of FOAA. We chose not to rely on section 10–A for two reasons: (1) HAD # 1's enabling legislation sufficiently details its governmental functions for us to conclude that it is a political subdivision for purposes of FOAA and that the requested records are public records; and (2) the hospital parties have challenged the constitutionality of section 10–A, and we decline to rule on the constitutionality of an enactment when it is not essential to do so. "As a general rule courts should endeavor to resolve the controversies before them without deciding constitutional issues, reaching such an issue only '[if] it is entirely necessary to a decision on the cause in which it is raised.'" *Osier v. Osier,* 410 A.2d 1027, 1029 (Me.1980) (quoting *State v. Good,* 308 A.2d 576, 579 (1973)). We simply note that section 10–A is not inconsistent with our interpretation of the enabling act as granting sufficient governmental powers on HAD # 1 to classify it as a political subdivision for purposes of FOAA.[12]

## III. TRADE SECRET EXEMPTION

[¶ 20] The hospital parties argue that the requested records are pro-

tected trade secrets and exempt under FOAA. Trade secrets are not expressly exempted by the terms of FOAA, but public records "that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials" are exempt from disclosure. 1 M.R.S.A. § 402(3)(B). Therefore, because there is a privilege to refuse to disclose trade secrets, under M.R. Evid. R. 507, HAD # 1 can refuse to disclose them. *See Bangor Publ'g Co. v. Town of Bucksport,* 682 A.2d 227, 229 (Me. 1996) (holding FOAA did not require town to disclose information which Superior Court had protected as trade secret).

[¶ 21] The term "trade secret" is not defined in Rule 507. The definition contained within the Uniform Trade Secrets Act is a useful guidepost. The Act defines a trade secret as "information" that "[d]erives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure . . . ." 10 M.R.S.A. § 1542(4)(A) (1997). Furthermore, the information must be the subject of reasonable efforts to maintain its secrecy. *Id.* § 1542(4)(B).

[¶ 22] Because the hospital parties have not suggested how the Quorum contract would meet a definition of a trade secret, we assume that they have limited their trade secrets argument to the compensation records. At trial the hospital parties contended that they would have difficulty attracting management employ-

---

12. The Superior Court concluded that section 10–A reached Quorum and its employees even if they otherwise would not be considered a public agency or public officials. Early in this litigation Quorum contended that it was not required to disclose any documents in its possession because it is not a public agency and its employees are not public officials. We do not decide whether Quorum is required to disclose records because it stipulated at trial that it would provide access to any records in its possession that the court ordered HAD # 1 to disclose.

ees and that the present employees would be recruited by other hospitals if the compensation information became known. The Superior Court made a factual determination that the requested documents are not protected trade secrets. The court found that there was no evidence that the compensation records were the subject of efforts to maintain their secrecy. It found that the employees who are receiving the compensation are under no duty to keep the information secret. Factual findings are reviewed for clear error, and there is no clear error in the Superior Court's factual determination. *See Rich v. Fuller,* 666 A.2d 71, 74 (Me.1995). Because the compensation records at issue have not been the subject of efforts to maintain their secrecy, they are not trade secrets, and the exemption in section 402(3)(B) of FOAA is not applicable to the compensation records of Victory and the chief financial officer of the hospital.

The entry is:

Judgment affirmed.

ALEXANDER, J., concurring.

[¶ 23] I concur that the Freedom of Access Act should be broadly construed to allow access to all documents relating to public contracts that are within a public agency's possession and control, unless subject to an exemption in the law. However, I want to emphasize that by contracting with a public agency, a private contractor does not open all of its private documents, not shared with the public agency, to public access. If the Quorum compensation records are shared with or approved by HAD # 1, they are public records; but if they are private to Quorum and its employees, and are not disclosed to HAD # 1, they would not be subject to public disclosure under the Freedom of Access Act, absent the stipulation noted in footnote 12 of the Court's opinion or the special provisions of section 10–A.