STATE OF MAINE
AROOSTOOK,ss.

SUPERIOR COURT
Docket #CV-03-016

Clarence Dow
and
Jeremy Williams

Plaintiffs

V

DECISION

Caribou Chamber of Commerce
and
City of Caribou

MAY 3 2005

This matter is before the Court on cross-motions for summary judgment between

Plaintiffs, Clarence M. Dow and Jeremy M. Williams, and Defendants, Caribou Chamber of

Commerce and Industry (herein "**CCCI**") and the City of Caribou (herein the "**City**"). The issue

before the Court is, 1) whether CCCI is subject to the Freedom of Access Act, 1 M.R.S.A. § 401

et seq. (Supp. 2004) (herein "**FOAA**"), as a public agency, department or political subdivision of

the City and, 2) if CCCI is a pubic agency, whether the requested information fall under the

definition of a "public record" or "pubic proceeding" under FOAA.

## Facts

Dow and Williams are residents of the City of Caribou. Plaintiff's Statement of Material

Facts ¶ 1 (herein "**PSMF**"). CCCI is a nonprofit corporation formed by private individuals

pursuant to 13-B M.R.S.A. § 403 by Articles of Incorporation on December 8, 1999. Id. at ¶ 2.

The City is a municipal corporation and governmental subdivision of the City of Caribou. Id. at

¶ 3. The parties agree that a justiciable controversy exists concerning the status of CCCI under the FOAA and whether the requested documents are "public records" as defined by § 402.3 and "public proceedings" as defined by § 403. Id. at ¶ 5. When CCCI was incorporated, the new entity merged the function of the Caribou Chamber of Commerce (herein "**CCC**") and the Caribou Development Corporation (herein "**CDC**"). Id. at ¶ 9. From 1998-2001 the City has appropriated certain funds to CCCI that has constituted at least 60% of CCCI total revenue for those years. Id. at ¶ 6-7. CCCI must apply for the grant from the City annually pursuant to the same process as any other outside entity requesting funding from the City. Defendant's Statement of Material Fact (herein "**DSMF**") ¶ 5. The remaining budget of CCCI is independent of the annual appropriations from the City. Id. at ¶ 5. CCCI does not enjoy an exemption from sales tax, which as an exemption that is available to the City and other political subdivisions. Id. ¶ 3. The Maine Municipal Association has determined that the employees of CCCI are not eligible to participate in the health insurance plan that the City is entitled to participate in because the Association determined that CCCI is not a municipal entity. Id. at ¶ 11. Even when CCCI was covered under the plan, the premiums were paid by CCCI. Id. at ¶ 12. Many of the assets of CDC, such as economic development funds, were transferred to CCCI at the time of the merger. PSMF at ¶ 10. One of the assets transferred to CCCI was the City's development fund that has been created from tax dollars designated by the City Council for economic development initiatives. Id. at ¶ 11. CCCI's Articles of Incorporation provided that the Board of Directors must consist of at least eight and up to fifteen members, three of whom were to be representatives of the City. Id. at 12. The current by laws provide for eleven members, two of whom are *ex officio* members, one being a member of the City Council and the other being either the City Manager or the Community Development Director for the City. Id. at 13. The *ex officio*

2

members do not count towards a quorum (50% of members) of members for the Board, but they do have full voting rights. Id. at ¶¶ 14-15. In 2001-2004, the Board members included the CEO of Cary Medical Center, a department of the City, and the Superintendent of the Caribou School Department. Id. at ¶¶ 16, 18. CCCI administers the City's development fund revolving loan program in return for its annual appropriations. DSMF at ¶¶ 7, 22. The City admits that if CCCI discontinued its administration of the program, the City would need to find someone else to perform that function. PSMF at ¶ 23. However, economic development is not an inherent function in which municipalities in Maine are required to engage and the City has never administered the loan program. DSMF ¶¶ 1, 8. Municipalities may choose to contract with private parties to provide particular services that municipalities choose not to provide. Id. at ¶ 9. The City's loan program was funded by tax revenue and government grants generated through the City. PSMF at ¶ 24. The City has no economic development officer, but CCCI denies that it performs its economic development function on behalf of the City. Id. at 26. CCCI promotes local business development, job creation, tourism, and seeks to increase the tax base for the City. Id. at ¶¶ 28-31.

On July 16, 2001, Williams wrote to CCCI seeking information pursuant to FOAA. On July 17, 2001, the executive director of CCCI refused to disclose the information. Id. at ¶¶ 32-33. On July 23, 2001, Williams again wrote to CCCI seeking further information and the executive director, again, refused to comply with the request. Id. at ¶¶ 34-35. On August 27, 2001 and again on August 8, 2002, the Plaintiffs, this time by counsel, made a written request for information and CCCI, again, refused to provide it. Id. at ¶¶ 36-37. CCCI argued in the letters that it was not a public entity subject to the requirements of the FOAA. Id. at ¶ 37. CCCI endeavors to maintain its borrowers' privacy by keeping their individual loan information

3

private. DSMF ¶ 14. CCCI does provide the City information about the loan program that is expressly the City's. Id. at ¶ 15.

Plaintiffs filed a Complaint seeking a declaratory judgment that:

a) CCCI is a political subdivision or agency of the City;

b) The record and proceedings of CCCI are public records and proceedings as defined by FOAA;

c) The City and CCCI be ordered to comply with FOAA and allow access to CCCI's records and proceedings;

d) any further relief as this court may deem necessary.

## Discussion

### A. Standard of Review

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); see also Darlings v. Ford Motor Co., 2003 ME 21, ¶ 14, 817 A.2d 877, 879. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924, 926. "'A fact is material when it has the potential to affect the outcome of the suit.'" Prescott v. State Tax Assessor, 1998 ME 250, ¶ 5, 721 A.2d 169, 172. Essentially the Court determines whether there is a genuine issue of material fact by comparing the parties' statement of material facts and corresponding record references. Corey v. Norman, Hanson & DeTroy, 1999 ME 196, ¶ 8, 742 A.2d 933, 938. The Court will view the evidence in light most favorable to the non-moving party. Anchorage Realty Trust v. Donovan, 2004 ME 137 ¶ 11 __ A.2d __.

4

## B. Applicable Law

### 1. Legal Status of CCCI under FOAA

FOAA declares that all public proceedings and records are to be conducted openly and are open to public inspection. 1 M.R.S.A. §§ 401, 408. FOAA defines "public proceedings" as, "the transactions of any functions affecting any or all of the citizens of the State by . . . . C. *Any board commission, agency or authority of any county municipality, school district or any regional or other political administrative subdivision.*" Id. at § 402.2 (c) (emphasis added). "Public records" are defined as any form of data compilation that,

> is in the possession or custody of any *agency* or public official of this State or any
>
> of its *political subdivisions*, or is in the possession or custody of an *association*,
>
> the membership of which is comprised exclusively of one or more of any of these
>
> entities, and has been received or prepared for use in connection with the
>
> transaction of public or governmental business or contains information relating to
>
> the transaction of public or governmental business . . . ."

Id. at § 402.3 (emphasis added).

FOAA mandates a liberal construction "to promote its underlying purposes and policies . . . ." Id. at § 401.

Therefore, before the Court can determine if the requested information is subject to FOAA, it must first determine whether CCCI is an agency or political subdivision of the City. Town of Burlington v. Hospital Administrative District No. 1, 2001 ME 59, ¶ 14, 769 A.2d 857, 861

There is very limited case law on the issue of whether an organization is a public entity for purposes of FOAA. However the Law Court in Burlington determined that a

5

Hospital Administrative District (herein "**HAD**") was a political subdivision and was subject to FOAA. Id. at ¶ 15, 769 A.2d at 862. The Court found that in order to determine whether an organization falls under FOAA as a public entity, the court must perform an "inspection of the functions of the entity under examination and a determination of whether, on balance the entity *functions as* a public agency." Id. at ¶ 17, 769 A.2d at 863 (emphasis added). The Court reviewed the functions of HAD and determined that it functioned as a political subdivision. It set forth and applied four factors that courts have generally considered in determining whether an entity is a public agency for the purpose of public disclosure rules. First, whether the entity is performing a governmental function; second whether the funding of the entity is governmental; third, the extent of government involvement or control; and fourth. whether the entity was created by private or legislative action. Id. at ¶ 16, 769 A.2d at 863. The Court went on to state that an entity need not conform to all of the factors but that each one should be considered and weighed. Id.

      a.      *Whether CCCI is performing a governmental function.*

The Plaintiffs primarily argues that CCCI's administration of the loan program and its mission of economic development are governmental functions, because the City would have to either perform these function or hire another entity to do so. Plaintiffs also argue that CCCI's other functions such as, increasing the tax base, bringing new business into the City, job creation and job retention are also governmental functions and weigh in favor of CCCI public entity status. However, the governmental function of HAD in Burlington was providing health care to the inhabitants in the district. CCCI's function in comparison is not nearly as "governmental", especially when one considers the

undisputed fact that none of the functions that CCCI performs are services that municipalities are required to engage in. In fact, compared to providing health care, the services provided by CCCI are almost luxuries provided by Maine's larger and more financially able municipalities than they are traditionally governmental functions. While it may be in the interest of the City to promote economic development, it is also in the interests of the members of CCCI, many of whom are business owners and none of whom are governmental bodies, to do so, This factor does not weigh heavily, if at all, in favor of the Plaintiffs.

b.      *Whether the funding of CCCI is governmental*

The Plaintiffs point to the fact that, on average, 60% of CCCI's funding is from the City on an annual basis. While this number is significant, it is not determinative. This Court would be going down a slippery slope if it found that only a majority of an entities funding had to be from the government in order for the entity to be considered a public agency under FOAA. CCCI funding is not a part of the annual budget of the City the same way the police or fire departments budgets are. Each year, CCCI must appear before the City Council and request the funding, just like any other private organization performing certain services for the City. The City, seeing it in their best interest, has provided the funding, but unlike other municipal departments the City could *easily* decide not to fund CCCI in the future.

In Burlington, HAD was not funded by a municipality or other governmental organization, but was granted the power to issue bonds and impose taxes. HAD's debts were also the responsibility of the inhabitants of the district as HAD had the power to take their property to pays its debts if necessary. When faced with this kind of

7

governmental funding, the Law Court found that HAD met the second factor. Id. at ¶ 17, 769 A.2d at 863.

While the City of Caribou provides a significant amount of CCCI's revenue, this factor alone does not weigh heavily in support of the Plaintiffs when determining if it meets the second factor. Unlike HAD, CCCI is not entirely dependent on public funding, it has no power to issue taxes or bonds and is responsible for its own debts. When the whole picture is examined, it is fairly clear that the funding of CCCI by the City is not determinative

c.      *Extent of Governmental Involvement and Control in CCCI*

The Plaintiffs argue that in addition to the financial dependence on the City, the make up of its Board constitute the necessary governmental involvement for the third factor to weigh in their favor. While there is some governmental involvement, only two of the eleven members of CCCI's board must be representatives of the City and neither one of them counts towards creating a quorum. In addition, the fact that the by laws were changed to decrease the number of representatives from three to two and then reduce their status to *ex officio* members indicates that CCCI has moved towards decreasing governmental involvement. Further, the fact that the representatives of the City are only present at the sufferance of CCCI, in that the by laws could be amended again to further reduce the City's representation on the board illustrates the fact that the City has only a nominal involvement in CCCI.

When compared with the governmental involvement of HAD, CCCI's freedom from governmental involvement is even clearer. HAD's entire Board was made up of elected members of each of the towns within the district. In comparison, CCCI's

8

members, in conjunction with an internal committee, choose all of the remaining members of the board. CCCI is also no longer under the City's health plan. While there is some governmental involvement, it is not to the extent that would warrant finding CCCI to be a public agency under FOAA, especially when compared with HAD in Burlington.

> d.     *Whether CCCI was created by private or legislative action*

The Plaintiffs reluctantly admit that the final Burlington factor weighs least in their favor. In Burlington, HAD was created by the Legislature. Id. at ¶ 17, 769 A.2d at 863. Here, CCCI was created as a private corporation by four local businessmen. It merged two other private corporations, CDC and CCC. Plaintiffs argue that because CCCI took custody over public funds with the consent of the City, it was formed by public action. However, this alone does not suffice and the Court finds that CCCI was not formed by public or legislative action.

When examining the four factors in Burlington and balancing them together, this Court finds that they weigh in favor of CCCI's status as a private entity and that CCCI is not subject to FOAA. First, CCCI does not perform purely governmental functions that the City would be required to conduct in its absence. Second, while CCCI does receive a significant portion of its budget from the City, CCCI is not wholly dependent on the City. Third, with only two *ex officio* members on the board, the extent of government involvement is present but only minimally and at the mercy of CCCI. Finally, CCCI was created by private individuals not the City or Legislature. Therefore, this court finds that CCCI is not a political subdivision or agency of the City of Caribou.

2.  *Availability of Requested Information*

As CCCI is not a public agency, department or political subdivision of the City and, therefore, not subject to FOAA, it is unnecessary for the Court to determine whether the requested information is a "public proceeding" or "public record" under the Act

## Conclusion

The Court finds that CCCI is not subject to the Freedom of Access Act and therefore grants CCCI's motion for summary judgment and denies the Plaintiffs' motion for summary judgment.

Dated: March 9, 2005

JOSEPH JABAR
JUSTICE, MAINE SUPERIOR COURT

10