ENTERED AUG 2 9 2014

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-14-01
MMM-CUM- 3/13/2014

)
THE LEWIN GROUP, INC.,                     )
                                           )
                Petitioner,                )
                                           )
        v.                                 )
                                           )
DEPARTMENT OF HEALTH AND                   )
HUMAN SERVICES,                            )
                                           )
                Respondent,                )     DECISION ON RULE 80C APPEAL
                                           )
and                                        )
                                           )
UNIVERSITY OF SOUTHERN MAINE               )
and UNIVERSITY OF NEW                      )
ENGLAND,                                   )
                                           )
                Intervenors                )
                                           )

The Lewin Group, Inc. (Lewin) appeals the February 7, 2014, decision of the

Department of Health and Human Services (the Department) to release documents pursuant to

the Maine Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-521 (2013). *See* 5 M.R.S. § 11001

(2013) (entitling an aggrieved party to judicial review of final agency action); M.R. Civ. P. 80C

(providing procedure for filing an administrative appeal). (Administrative Record (hereinafter,

"A.R.") 347-50.)[1] The documents in question (hereinafter, the "proprietary documents")[2] were

submitted to the Department by Lewin as a bid proposal in response to request for proposal

---

[1] The Department submitted the administrative record with a redacted version of Lewin's proposal based on Lewin's assertion of privilege over certain documents. (A.R. 44-180.) The Department also submitted a separate, unredacted version of Lewin's proposal under seal to maintain the confidentiality of the documents in question pending the Court's decision. Citations to the confidential documents in the separate filing are indicated by "C.R."

[2] These documents include Lewin's Budget Narrative, which was marked "LEWIN PROPIETARY & CONFIDENTIAL" (C.R. 163-80), and three documents In the Budget Form that were not marked confidential, but which Lewin contends were in fact confidential (C.R. 152, 154-55).

1

(RFP) number 20130960. Lewin maintains that the proprietary documents are privileged trade secrets, not public records pursuant to 1 M.R.S. § 402(3)(B), and thus not subject to public inspection. Upon review of the administrative record and the parties' arguments, the Court affirms the decision of the Department to release the documents.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2013, the Department published RFP No. 201309604 for proposals to provide evaluation services for the Maine State Innovation Model.[3] (A.R. 1.) Of particular relevance to the present dispute, the RFP stated:

> Following announcement of an award decision, all submissions in response to this RFP will be considered public records available for public inspection pursuant to the State of Maine Freedom of Access Act[]. In the event a request is made to produce any proposal, the Department will notify the bidder that the Department will produce the proposal unless the bidder takes steps it deems necessary to prohibit production. The Department will not undertake to determine whether any proposal or part of any proposal is confidential or otherwise protected from disclosure.

(A.R. 5.) *See also* 5 M.R.S. § 1825-B(6) (2013) ("Each bid, with the name of the bidder, must be entered on a record. Each record, with the successful bid indicated, must be open to public inspection after the letting of the contract.")

There were 4 entities that responded to the RFP, including Lewin and the University of Southern Maine (USM). (80C Petition ¶¶ 4-5, 7.) Lewin submitted its response to the RFP on November 22, 2013. (A.R. 44.) Lewin marked the Budget Narrative in its proposal "LEWIN PROPIETARY & CONFIDENTIAL", but did not designate or otherwise indicate that any other document in the proposal was confidential. (C.R. 163-80.) On January 2, 2014, Lewin was awarded the bid. (80C Petition ¶ 6.)

---

[3] "The Maine State Innovation Model advances health care delivery system and payment reform initiatives that impact the State's public payer sector on cost reduction, quality improvement, and informed patient engagement – the Triple Aim goals." (A.R. 4.)

Although the initial request is not included in the administrative record, USM requested a copy of Lewin's proposal some date prior to January 8, 2014, because on that date the RFP Coordinator provided USM with a version of the proposal that redacted information marked by Lewin as proprietary or confidential. (A.R. 181; *see also* A.R. 213.) Among the documents released to USM on January 8, 2014, were three documents in the Budget Form that were not marked confidential, but which Lewin contends were in fact confidential.[4] (A.R. 190; C.R. 152, 154-55.)

On January 10, 2014, USM submitted a FOAA request to the RFP Coordinator for Lewin's full, non-redacted proposal. (A.R. 181.) By letter dated January 13, 2014, the Department notified Lewin of the request and stated it intended to release the documents on January 17, 2014, unless Lewin objected and took timely legal action to prevent production. (A.R. 182.) Lewin stated is objections via letter on January 16, 2014, and January 17, 2014, asserting that the proprietary documents were trade secrets because they contained "budget detail for the Project by person by task; and indirect cost rate detail consistent with its federally approved accounting practices for the allocation of costs." (A.R. 190; *see* A.R. 189-94.) Lewin asserted that the proprietary documents have "independent economic value to Lewin by virtue of its secrecy and if available to competitors of Lewin without an obligation to keep it confidential, could be used to generate competitive harm from, either [from] competitive procurements [or] seeking to hire Lewin personnel to join the competitor." (A.R. 190.) Lewin asserted that the information within the proprietary documents was not widely known or distributed within Lewin itself and provided the Department with two confidentiality forms it utilizes to protect the pricing information and its policy regarding protecting information and confidential assets. (A.R. 193, 196, 198, 202-03.)

---

[4] Lewin asserted that the Budget Forms were not marked confidential because it was "unable to change the proscribed format of the Budget Forms." (A.R. 190.)

USM revised its FOAA request by letter dated January 17, 2014 (A.R. 199-200), and on January 20, 2014, the FOIA Group, Inc. requested unredacted versions of all the proposals submitted in response to RFP No. 20130960 (A.R. 204). USM responded to Lewin's assertion that the proprietary documents were trade secrets on January 28, 2014. (A.R. 340-45.)

On February 7, 2014, the Department issued its decision to release Lewin's full proposal. The Department's reasoning was twofold. First, each bidder was on notice pursuant to the RFP that its submission would be considered a public document pursuant to FOAA, and prior to submission, Lewin did not seek a protective order of the proprietary documents. (A.R. 349.) Second, the Department concluded that the proprietary documents were not in fact trade secrets because they contained primarily compensation data, which the law Court has indicated is not a trade secret. (A.R. 349-50 (citing *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, 769 A.2d 857).) The decision stated that it constituted final agency action by the Department. (A.R. 350.)

On February 13, 2014, the Bureau of General Purchases withdrew the award to Lewin and announced its intention to re-review and rescore the submissions. (80C Petition ¶ 6 n.1; Pet.'s Br. 1 n.1.)

Lewin filed an appeal of the Department's decision in Kennebec County Superior Court on February 14, 2014. The matter was approved for transfer to the Business and Consumer Court on February 28, 2014. The Court agreed to expedite briefing on and review of the petition, and the parties waived oral argument.

## DISCUSSION

### I. THRESHOLD ISSUES

Before addressing the merits of the appeal, the Court must address three threshold issues: mootness, waiver, and the standard of review.

4

## A. Mootness

Although not addressed specifically by the parties, the Court cannot ignore that Lewin is no longer the winning bidder on the RFP, raising the specter of mootness to Lewin's appeal. A case may become moot if "the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy," even though "the case raised a justiciable controversy at the time the complaint was filed." *Roop v. City of Belfast*, 2008 ME 103, ¶ 3, 953 A.2d 374 (quotation marks omitted). Here, however, the State's bidding and contracting procedure requires that all bids, regardless of whether a bid is the winning bid, must be open to public inspection upon the letting of the contract. *See* 5 M.R.S. § 1825-B(6). Thus, the Court concludes that the case presents a justiciable controversy because even if Lewin is not awarded the bid upon rescoring, its proposal will still be subject to public inspection. *See id.*

## B. Waiver

The parties' briefs do touch upon the issue of notice or waiver, specifically whether Lewin waived its objections to disclosure pursuant to FOAA by: 1) submitting its bid in response to the RFP; 2) not seeking a protective order prior to submitting its bid (*see* A.R. 349); and 3) not designating three documents confidential within its bid (C.R. 152, 154-55).

As noted, the RFP clearly states that "all submissions in response to this RFP will be considered public records available for public inspection pursuant to the State of Maine Freedom of Access Act[]." (A.R. 5.) The RFP goes on to provide, however, that "[i]n the event a request is made to produce any proposal, the Department will notify the bidder that the Department will produce the proposal unless the bidder takes steps it deems necessary to prohibit production." (A.R. 5.)

The Court does not agree that submitting documents pursuant to the RFP constitutes a waiver of any confidentiality or the right to challenge subsequently the release of those

5

documents. Lewin designated certain documents as confidential, and while it would have been prudent for Lewin to indicate in some manner all the documents it contended were proprietary, the designation is not absolutely necessary. *Cf. Anastos v. Town of Brunswick*, 2011 ME 41, ¶ 6, 15 A.3d 1279 ("Although it might be prudent to identify a document as confidential when first submitting it to a government agency, [a party]'s failure to do so does not remove it from the protection of the statute.") Designating some documents, but not all documents, is not a waiver of the privilege. *See* M.R. Evid. 510.

## C.    Standard of review

Finally, the parties dispute the standard of review the Court should be applying in this matter. Lewin admits that this is an administrative appeal, but argues that the Court should engage in a de novo review of the issues. Lewin equates the Department's decision to release the documents with an agency's decision to refuse to produce a document pursuant to 1 M.R.S. § 408-A(4), which denial triggers de novo review by the Superior Court, *see* 1 M.R.S. § 409(1). The Department argues that de novo review is not appropriate because the present appeal is not a FOAA action. The Department asserts that a FOAA action is limited to compelling a holder of public records to disclose documents; FOAA does not provide a cause of action for a party to enjoin an agency or official from disclosing information. Rather, the Department argues that the correct standard of review for this "reverse-FOAA" challenge is found in the Administrative Procedures Act (APA), 5 M.R.S. §§ 11001-08 (2013).

The Court agrees that the correct standard of review is from the APA, and not FOAA. FOAA provides a cause of action for a "*person aggrieved by a refusal or denial* to inspect or copy a record or the failure to allow the inspection or copying of a record" to appeal "the *refusal, denial or failure* . . . to any Superior Court within the State as a trial de novo." 1 M.R.S. § 409(1) (emphasis added). Facially, section 409 does not speak to an appeal of the decision of an

6

agency or official to grant a request to inspect or copy documents. *See id.* In contrast, Maine's APA permits "any person who is aggrieved by final agency action [to seek] judicial review thereof in the Superior Court." 5 M.R.S. § 11001(1).

The Court's conclusion is consistent with federal law,[5] and with the Law Court's decision in *Medical Mutual Insurance Co. of Maine v. Bureau of Insurance*, 2005 ME 12, 866 A.2d 117, which the Court finds to be particularly instructive in this case. In *Medical Mutual*, the Law Court specifically stated that it was reviewing the decision of the Bureau of Insurance to release documents in the context of an administrative appeal. *Id.* ¶ 5.

Lewin nevertheless contends that two Law Court cases mandate pure de novo review of FOAA decisions: *Citizens Communications Co. v. Attorney General*, 2007 ME 114, 931 A.2d 503, and *Moffett v. City of Portland*, 400 A.2d 340 (Me. 1979). *Moffett* is plainly distinguishable, however, in that it did not involve the release of documents by a state agency, but by the City of Portland, and thus did not implicate the APA. 400 A.2d at 343. *Citizens Communications*, although potentially involving an APA issue, is not controlling because the parties never raised the issue to the Superior Court or the Law Court.[6] The direction for this Court is better found within *Medical Mutual*, which addresses the confluence of the APA and FOAA.

---

[5] The United States Supreme Court has concluded that in the federal context, a party seeking to prohibit disclosure of documents by an agency must do so pursuant to the federal APA, and not the Freedom of Information Act (FOIA). *See Chrysler Corp. v. Brown*, 441 U.S. 281 *passim* (1979). *Brown* involved similar circumstances to those presented here: a party seeking to prohibit disclosure by an agency of trade secrets pursuant to a FOIA request. *Id.* at 287-88. The Supreme Court concluded that whether an agency's disclosure of documents pursuant to FOIA violated the prohibition on revealing trade secrets was within the scope of review of the APA as to whether the agency's action was "not in accordance with the law." *Id.* at 318 (quoting 5 U.S.C. § 706(2)(A)).

[6] The Law Court's decision does not address the APA and analyzes the issue of the Attorney General's decision to release documents pursuant to FOAA de novo. *Citizens Commc'ns*, 2004 ME 114, ¶¶ 7-9, 931 A.2d 503. At the Superior Court level, the parties treated the consolidated action as pursuant to FOAA and did not raise the APA issue. *See* Complaint, *Citizens Commc'ns Co. v. Attorney General*, KENSC-CV-07-68 (Me. Super. Ct., Ken. Cty., Feb. 28, 2007) (seeking a declaratory judgment and a permanent injunction preventing release of the documents by the Attorney General); Complaint, *Societe Colas, S.A. v. Attorney General*, KENSC-CV-07-73 (Me. Super. Ct., Ken. Cty., Mar. 5, 2007) (appealing the Attorney General's refusal to disclose documents in a timely fashion pursuant to section 409 of FOAA). These two actions were

7

In sum, the Court concludes that the APA provides the framework for this appeal and the Court's review must be pursuant to 5 M.R.S. § 11007 and Rule 80C, with the statutory mandates of FOAA at the forefront. *See Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶¶ 5-7, 866 A.2d 117.

## II. STANDARD OF REVIEW

In an appeal of final agency action brought pursuant to the APA and M.R. Civ. P. 80C, this court reviews "the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Beauchene v. Dep't of Health & Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866; *accord* 5 M.R.S. § 11007(4). "The court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(3). "Statutory construction is a question of law," and the Department's construction of FOAA is reviewed de novo. *Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 5, 866 A.2d 117.

The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857. "FOAA must be 'liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent.'" *Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 5, 866 A.2d 117 (quoting 1 M.R.S.A. § 401 (1989)). Exceptions to FOAA are strictly construed. *See Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 8, 754 A.2d 353. "The party seeking the denial of a request to inspect and copy a record pursuant to section 408(1) has the burden to demonstrate the basis for the denial." *Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 6, 866 A.2d 117.

Accordingly, Lewin has the burden of showing that the proprietary documents are not public records as defined by section 402. The parties do not dispute the essential framework for

consolidated on March 8, 2007. Order, *Citizens Commc'ns Co. v. Attorney General*, KENSC-CV-07-68 (Me. Super. Ct., Ken. Cty., Mar. 8, 2007).

8

the analysis, or that the proprietary documents would be public records subject to disclosure absent an exception. The exception asserted by Lewin is the privilege exception for trade secrets.

III. ANALYSIS

Lewin argues that the "privilege" exception applies because its proprietary documents are trade secrets, which are not subject to discovery pursuant to M.R. Evid. 507. *See* 1 M.R.S. § 402(3)(B) (providing "[r]ecords that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding" are not public records). "[W]hether particular records fall within the privileged records exception" is determined "by considering whether by reason of a privilege they would be inadmissible as evidence in a court proceeding in the State of Maine." *Moffett*, 400 A.2d at 346.

Here, the parties agree that M.R. Evid. 507 protects trade secrets from disclosure in discovery. The parties dispute, however, whether the proprietary documents are in fact trade secrets. "[T]he definition of a trade secret is a matter of law, while the determination in a given case whether specific information is a trade secret is a factual question." *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 27, 770 A.2d 97 (quotation marks omitted) (alteration in original).

Because M.R. Evid. 507 does not define trade secret, the Law Court has looked to the Uniform Trade Secrets Act, 10 M.R.S. §§ 1541-48 (2013), as a useful guidepost for determining what constitutes a trade secret. *Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 21, 769 A.2d 857. A trade secret is "information" that "[d]erives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 10 M.R.S.

9

§ 1542(4); *accord Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 nn.6-7, 730 A.2d 166 (expounding relevant factors by which a court may determine whether the alleged trade secret derives value from not being generally known and the efforts made at maintaining secrecy).

The Department analyzed the claim of trade secret by Lewin according to the foregoing framework and concluded that the proprietary documents were not trade secrets. As noted, the determination of whether information constitutes a trade secret is a factual question. *See Bernier*, 2001 ME 17, ¶ 27, 770 A.2d 97. The Department had in the record before it: 1) all of the information submitted in the bidding process from Lewin, which obviously included the information that it claims to constitute trade secrets; 2) two confidentiality forms that Lewin uses to protect pricing information; and 3) Lewin's policy regarding protecting information and confidential assets. Lewin submitted this information as Exhibit A (excerpt from "Employee Acknowledgement Form" for new hires) and Exhibit B ("Form of Confidential Disclosure / Proprietary Financial Documentation Proposal Submission" used when Lewin is a subcontractor to a prime who must disclose pricing information) to a letter dated January 17, 2014, and as an attachment to an e-mail dated attached January 18, 2014 ("Protecting Information Assets & Confidential Information"). (A.R. 193, 196, 198, 202-03.) The January 17, 2014, letter indicates that Lewin submitted this additional evidence in support of its argument that it had taken steps to protect this kind of information internally. (A.R. 193.) Lewin also had the opportunity to present the Department with argument as to why the proprietary documents were trade secrets. (A.R. 189-94.)

Simply stated, Lewin failed to show the information fell "within the definition of a trade secret; that is, it failed to demonstrate to the [Department] that the [proprietary documents] had independent economic value from not being generally known and "failed to show that it is in fact subject to secrecy." *Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 14, 866 A.2d 117. The

10

Department concluded based on the evidence it had before it that "it is doubtful that the release of the documents at issue would truly put the company at a significant economic disadvantage." (A.R. 350.) The Court cannot second-guess this factual finding by the Department, which is supported by competent evidence on the record. *See Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263.

Based on the foregoing, the decision of the Department of Health and Human Services to release Lewin's proprietary documents is AFFIRMED. Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this order into the docket by reference.

Date: ___3 | 13 / 14___

Justice M. Michaela Murphy
Business and Consumer Court

**The Lewin Group v. Mary Mahew, Commissioner, Department of Health and Human Services**
**BCD-AP-14-01**

**The Lewin Group**
    **Petitioners / Plaintiffs**

      Counsel:                 Martha Gaythwaite, Esq.
                             Marie Mueller, Esq.
                             One Portland Square
                             Portland, ME 04112

**Mary Mahew, Commissioner, Department of Health and Human Services**
    **Respondents / Defendants**

      Counsel:                 Barry Mills, Esq.
                             Hale & Hamlin
                             PO Box 729
                             Ellsworth, ME 04605