STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT

CIVIL ACTION

DOCKET NO: CV-10-521

RAC-(UM) - 4/29/20??

RICHARD WASHBURN,

Plaintiff,

v.

STATE TAX ASSESSOR

Defendant

ORDER

STATE OF MAINE
Cumberland ss. Office

APR 29 2011

RECEIVED

On September 22, 2010, plaintiff Richard Washburn requested that the State Tax Assessor produce six types of documents for inspection pursuant to Maine's Freedom of Access Act (FOAA), 5 M.R.S. §§ 401–411 (2009). Three documents are now at issue.

Two documents are described as Sales Tax Reference Manuals, known informally as the "Blue Book," last revised in 1989, and its predecessor the "Black Book." They are comprised of "numerous non-public excerpts largely relating to application of Maine's sales and/or use tax laws to specific taxpayers and their fact scenarios." (Def.'s Brief at 3.) The excerpts are "frequently of the type generated in direct response to a matter involving a specific taxpayer." (Def.'s Brief at 4.) Staff members at Maine Revenue Services use the Manuals as informal references. (Def.'s Brief at 4.)

The third document is a one-page memorandum from 1975 that makes reference to "breathing equipment" or similar words. The Assessor concedes that Maine Revenue Services no longer has any understanding of the details or original purpose of the memo. However, the Assessor argues that, from the way

1

the memo is worded, "it appears that [it] may have been generated in response to a particular set of facts relating to a specific taxpayer." (Def.'s Brief at 4–5.)

The Assessor and Maine Revenue Services denied Mr. Washburn's FOAA request for the above three documents. Citing Maine's Confidentiality of Tax Records statute, 36 M.R.S. § 191, the Assessor determined that the records, in their entirety, were designated confidential by statute and therefore not "public records" that could be divulged under FOAA. *See* 1 M.R.S. § 402(2)(A) (2010) (excepting records designated confidential by statute from FOAA's definition of public records). Mr. Washburn appeals to this court for a de novo trial of the issue. 1. M.R.S. § 409(1) (2010).

## DISCUSSION

Maine's FOAA, like the federal Freedom of Information Act (FOIA),[1] "is intended to address the public's right to hold the government accountable." *Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 31, 871 A.2d 523, 533. It is an essential tool that allows the citizenry to remain informed about "what its government is up to" and determine whether public officials are upholding their civic responsibilities. *Id.* ¶ 32, 871 A.2d at 533. To this end, FOAA gives "every person . . . the right to inspect and copy any public record during the regular business hours of the agency or official having custody of the public record within a reasonable period of time after making a request," except as otherwise provided by statute. 1 M.R.S. § 408(1) (2010).

FOAA is to be "liberally construed and applied to promote its underlying purposes and policies," and exceptions to disclosure are to be strictly construed. 1 M.R.S. § 401 (2009); *Citizens Communs. Co*, 2007 ME 114, ¶ 9, 931 A.2d at 505–06.

---

[1] 5 U.S.C. § 552 (2006).

An agency must show "just and proper cause" if it denies a FOAA request for public records. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857, 861. Public records are defined to include any writing "that is in the possession or custody of an agency or public official . . . [that] has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business," with certain delineated exceptions. 1 M.R.S. § 402(3) (2010). "Records that have been designated confidential by statute" are not "public records." 1 M.R.S. § 402(3)(A) (2010).

Maine Revenue Services is unquestionably a public agency, and the three documents at issue were admittedly prepared for use in administering the state's sales and use tax provisions. While they meet the basic definition of public documents, the Assessor argues that they are in fact not public because they have been designated confidential by 36 M.R.S. § 191. Section 191 states:

> It is unlawful for any person who . . . has been permitted to receive or view any . . . report, return or other information provided pursuant to [Title 36, Taxation,] to divulge or make known in any manner any information set forth in any of those documents or obtained from examination or inspection . . . of the premises or property of any taxpayer.[2]

36 M.R.S. § 191 (2010).

The Assessor contends that the Manuals and the 1975 memorandum contain information that do or could identify specific taxpayers, or were generated in response to particular taxpayers' scenarios. Citing the United States Supreme Court's decision in *Church of Scientology of California v. Internal Revenue Service* addressing the analogous federal statute, the Assessor argues that the

---

[2] Section 191 goes on to list numerous, detailed exceptions, none of which are alleged to apply to this action.

3

presence of protected information renders the entire document confidential and ineligible for redaction. 484 U.S. 9, 18 (1987). Mr. Washburn claims that he only seeks the legal analyses, interpretations, and conclusions contained in the documents. He contends that this information is not subject to section 191 and can be separated from the material that is so protected.

Section 191 was originally enacted in 1978 in response to a federal law prohibiting federal taxpayer return information from being shared with states that did not adopt "provisions of law which protect the confidentiality of" that information. L.D. 2031, Statement of Fact (108th Legis. 1978); Tax Reform Act of 1976 § 1202(a)(1), Pub. L. No. 94-455, 90 Stat. 1520, 1685 (codified at 26 U.S.C. § 6103(p)(8) (2006)). Maine's courts have had few opportunities to apply section 191, and both parties support their positions by citing decisions interpreting section 191's federal analog. The court now turns to this body of law.

Title 26, section 6103 of the United States Code makes tax returns and "return information" confidential. 26 U.S.C. § 6103(a) (2006). The term "return information" is defined as:

> a taxpayer's identity, the nature, source, or amount of his income, . . . or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax . . . .

26 U.S.C. § 6103(b)(2)(A) (2006). In contrast, written determinations, defined as rulings, determination letters, technical advice memoranda, or Chief Counsel advice, must be disclosed to the public. 26 U.S.C. § 6110(a)–(b)(1)(A) (2006). "[T]he names, addresses, and other identifying details of the person to whom the written determination pertains and of any other person" must be deleted from a written determination before it is opened to the public. 26 U.S.C. § 6110(c)(1)

4

(2006). Finally, a clause known as the "Haskell Amendment" excludes from the definition of "return information" any "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2) (2006).

The Assessor places great emphasis on the United States Supreme Court's interpretation of section 6103 in *Church of Scientology of California v. Internal Revenue Service*, 484 U.S. 9 (1987). In *Church of Scientology*, the petitioner filed a FOIA request for "[c]opies of all information relating to or containing the names of" various specific entities or persons "in the form of written record, correspondence, document, memorandum, form," et cetera. 484 U.S. at 11 (quotations omitted). The IRS denied the request on the grounds that all of the records were protected returns or contained return information. *Id.* According to the IRS, "return information" might "as a practical matter . . . include the report of an audit examination, internal IRS correspondence concerning a taxpayer's claim, or a notice of deficiency issued by the IRS . . . ." *Id.* at 14.

The petitioner argued that the Haskell Amendment in section 6103 removed "from the classification of 'return information' all data which do not identify a particular taxpayer . . . ." *Id.* at 14. It would follow that the IRS could redact from the records all information identifying particular taxpayers and make those records public. *Id.* The Court rejected these arguments.

The Haskell Amendment removes from the definition of "return information" any "'data *in a form*' that cannot be associated with or otherwise identify a particular taxpayer." *Id.* at 15 (quoting 26 U.S.C. § 6103(b)(2)). After reviewing the Amendment's text and legislative history, the Court implicitly agreed with the Court of Appeals' conclusion that "Congress contemplated 'not

5

merely the deletion of an identifying name or symbol on a document that contains return information, but agency *reformulation* of the return information into a statistical study or some other composite product . . . .'" *Id.* at 13 (quoting *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 160 (D.C. Cir. 1986) (en banc)). The Supreme Court thus held that "as with a return itself, removal of identification from return information would not deprive it of protection under § 6103(b)," and the IRS had "no duty under the FOIA to undertake such redaction." *Id.* at 18.

The Assessor analogizes the documents at issue in this case to those being sought in *Church of Scientology*, and argues that the presence of information protected under section 191 makes an entire document confidential and not subject to redaction. This argument ignores the context of the *Church of Scientology* decision. In that case, the records in question were implicitly composed entirely of "return information." The broad definition of that term in section 6103(b)(2) includes data that pertains to an individual taxpayer without identifying that taxpayer. *Church of Scientology* only establishes that "return information" that does independently identify a specific taxpayer cannot be deprived of its statutory protection by redacting "return information" that does identify a specific taxpayer. *See First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 312, 323 (Fed. Cl. 2000) ("The Court in *Church of Scientology* did not hold that the mere presence of any return information within a document renders the entire document non-discoverable.")

Mindful of the *Church of Scientology*'s lesson, Mr. Washburn argues that the information he seeks is not protected by Maine's confidentiality statute at all. The 1997 case of *Tax Analysts v. Internal Revenue Service* illustrates his point. 117

F.3d 607 (D.C. Cir. 1997). *Tax Analysts* dealt with IRS documents known as Field Service Advice Memoranda (FSAs). 117 F.2d at 608. FSAs provide IRS field personnel legal guidance on request, "usually with reference to the situation of a specific taxpayer. Each FSA includes a statement of issues, a conclusions section, a statement of facts, and a legal analysis section." *Id.* at 609. Their purpose is to ensure "that field personnel apply the law correctly and uniformly," and while they are not binding they "are held in high regard and are generally followed." *Id.* Prior to 1993, summaries of FSAs were regularly distributed in an internal monthly publication. *Id.* at 609 n.1.

The petitioner in *Tax Analysts* filed a FOIA request seeking disclosure of a number of FSAs. *Id.* at 608. Citing *Church of Scientology*, the IRS determined that under section 6103(b) the FSAs were confidential documents in their entirety because they contained "return information."[3] *Id.* at 611. Echoing the dispute in the present case, the *Tax Analysts* court explained: "Whether [section 6103] shields not simply part of each FSA but the entire document is the point of dispute." *Id.* After examining the text of sections 6103 and 6110, the court determined that the "[*l*]*egal analyses* contained in the FSAs [were] not 'return information,'" even though the analyses had been prompted by inquiries regarding specific taxpayers. *Id.* 616. *Church of Scientology* did not apply, and the IRS was directed to disclose the FSAs after redacting the protected "return information" contained therein.

It is true that the conclusion in *Tax Analysts* was driven in part by the existence of section 6110. *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C.

---

[3] The parties did not dispute that the FSAs in question did in fact relate to individual taxpayers and contained "at least some 'return information.'" *Tax Analysts*, 117 F.3d at 611.

Cir. 2001). Section 6110 mandates the redaction and disclosure of "written determinations" and was intended to "provide the exclusive means of public access" to such documents, displacing FOIA. *Fruehauff Corp. v. IRS*, 566 F.2d 574, 577 (6th Cir. 1977). The *Tax Analysts* court found that there was no meaningful distinction between the information to be disclosed pursuant to section 6110 and the information being sought in the subject FSAs.[4] *Tax Analysts*, 117 F.3d at 615–16.

It is not true, however, to say that section 6110 directed the result in that case. Rather, it was the democratic principles behind section 6110 that governed the court's analysis. The court reasoned:

> [L]egal analyses and conclusions . . . cannot be viewed as unique to a particular taxpayer, or as the IRS puts it, "taxpayer specific." If the Office of Chief Counsel renders an interpretation of a certain section in the tax code, whether in an FSA or elsewhere, that interpretation should apply to all other taxpayers who are, in material respects, similarly situated. Treating like cases alike is, we have said, "the most basic principle of jurisprudence." . . . [T]he principle fully applies to those who administer the federal tax laws. . . . When Congress amended the tax code in 1976 to require the IRS to disclose Private Letter Rulings and Technical Advice Memoranda, . . . it did so because "the secrecy surrounding" these written determinations "has generated suspicion that the tax laws are not being applied on an evenhanded basis." . . . Regulation, statutes, judicial rulings, *and their interpretation and application*, thus are decidedly not taxpayer-specific in any meaningful respect.

*Id.* at 614 (citations omitted) (emphasis added). In short, section 6110 does not remove analysis, interpretation, and application of the tax laws from the definition of "return information." Rather, Congress mandated public disclosure of the agency's analysis, interpretation, and application of the tax laws because

---

[4] The court noted that FSAs did not exist in their present form until 1991, fifteen years after Congress enacted section 6110. *Id.* at 616. Congress's failure to mention FSAs in section 6110 could not have evinced any intent to specifically render them immune from disclosure.

8

such information cannot remain confidential in an open society governed by the even-handed rule of law.

Turning back to the Maine law controlling this case, section 191 unambiguously protects from disclosure all information provided by a taxpayer through "any report, return or other" means, and all information obtained from inspecting a taxpayer's property. 36 M.R.S. § 191(1) (2010). As with section 6103 in the federal statute, section 191's embrace is not limited to information that identifies specific taxpayers. This is not to say that the scope of its protection is limitless.

Legal analyses in which the Assessor or Maine Revenue Services interprets Maine's tax laws unambiguously fall outside the realm of information protected by section 191. Legal analysis is not provided by a taxpayer or "obtained from examination or inspection" of the taxpayer's property. 36 M.R.S. § 191(1) (2010). It is, rather, the Assessor's or Maine Revenue Services' explanation of how the law is to be applied, generated *in response to* information obtained from a taxpayer. Where analysis has been formulated to interpret and apply the law to a hypothetical taxpayer or a class of taxpayers, no confidential taxpayer information is implicated.[5] *See First Heights Bank, F.S.B.*, 46 Fed. Cl. at 323 (section 6103 does not prevent disclosure of information unique to specific to types of taxpayers because nearly all IRS documents are specific to "groups of taxpayer").

Regarding the documents being sought in this case, the 1975 memorandum appears to consist entirely of the sort of non-specific legal analysis

---

[5] This is consistent with the Superior Court's analysis in *Ptak v. State*, 2007 Me. Super. LEXIS 263 (Nov. 27, 2007) (Mills, J.). At issue in that case were audit letters composed entirely of information obtained from the individual taxpayers being audited.

described in the preceding paragraph. The memorandum's contents discuss how the Sales and Use Tax Division would apply Maine's tax laws to different forms and components of breathing therapy devices in 1975. While it was clearly written in response to a particular taxpayer's inquiry, nothing in the analysis separates that taxpayer from the general class of taxpayers who deal with breathing therapy devices. The memorandum is formulated as a legal analysis of a hypothetical situation involving a hypothetical taxpayer, and does not contain any information protected by section 191.

The Blue Book and Black Book are largely composed of similarly formulated, hypothetical analyses addressing whole classes of taxpayers. Unlike the 1975 memorandum, however, these Reference Manuals clearly do contain some taxpayer-specific information. Some of the excerpted analyses are not formulated to address classes of taxpayers, and instead contain detailed discussions of named, particular taxpayers' factual circumstances. The issue is whether the Manuals can be made suitable for public disclosure by redacting this protected information. The court believes that they can.

"Maine courts can require redaction of records in connection with FOAA requests. . . . The degree of 'cutting and pasting' required to redact documents cannot justify bypassing redaction unless it is demonstrated to be truly impractical or onerous." *Blethen Me. Newspapers, Inc.*, 2005 ME 56, ¶¶ 38–39, 871 A.2d at 535 (citing *Springfield Terminaly Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 11 n.4, 754 A.2d 353, 357 n.4) (citation omitted). The court has already disposed of the argument that the presence of some protected taxpayer information renders an entire document exempt from disclosure following *Church of Scientology*. The Assessor's remaining arguments on this point, made in reference

10

to *Blethen* and *Anastos v. Town of Brunswick*, 2011 ME 41, are unpersuasive. Those cases deal with wholly different exceptions to FOAA and their respective analyses are not readily applicable to section 191. *See Anastos*, 2011 ME 41, ¶¶ 1–3, ___ A.3d ___ (applying 5 M.R.S. § 13119-A, governing proprietary information submitted to departments or municipalities, to request for a business feasibility study submitted to Town); *Blethen Me. Newspapers, Inc.*, 2005 ME 56, ¶¶ 3–4; 871 A.2d at 525– 526 (interpreting 16 M.R.S. § 614, the Criminal History Record Information Act, as applied to request for records "pertaining to Attorney General's investigation of alleged sexual abuse by" priests).

After reviewing the Reference Manuals *in camera*, the court determines that redacting the taxpayer-specific information contained therein would not be impractical or onerous. The majority of the excerpted analyses in the Reference Manuals address groups or types of taxpayers and do not contain any information protected by section 191. Excerpts that speak to particular, identified taxpayers and taxpayer situations are relatively few and far between. In these excerpts, the information received from those particular taxpayers can be separated from the generally applicable analyses and redacted.

11

**The entry is:**

The court orders the Assessor to provide Mr. Washburn with the 1975 memorandum pursuant to his FOAA request. The Assessor will provide Mr. Washburn with the so-called Blue Book and Black Book after redacting any information obtained from a taxpayer through a report, return, or other means, or from actual examination or inspection of a taxpayer's property. Legal analyses addressing groups of taxpayers, hypothetical situations, or hypothetical taxpayers, are not protected information obtained from a taxpayer.

DATE: April 29, 2011

Roland A. Cole
Justice, Superior Court

12

RICHARD WASHBURN VS STATE TAX ASSESSOR
UTN:AOCSsr  -2010-0108926                        CASE #:PORSC-CV-2010-00521
-----------------------------------------------------------------------------

01 0000007544          BLOCK, JONATHAN
     ONE MONUMENT SQUARE PORTLAND ME 04101
     F     RICHARD WASHBURN                      PL        RTND   10/14/2010

02 0000009150          BOAK, SCOTT W
     111 SEWALL STREET 6 STATE HOUSE STATION AUGUSTA ME 04333-0006
     F     STATE TAX ASSESSOR                    DEF       RTND   11/22/2010

03 0000009331          KULL, ANDREW J
     86 MAIN STREET AUBURN ME 04210
     T     STATE TAX ASSESSOR                    DEF       RTND   11/23/2010

RICHARD WASHBURN VS STATE TAX ASSESSOR
UTN:AOCSsr  -2010-0108926                          CASE #:PORSC-CV-2010-00521
------------------------------------------------------------------------------

04 0000009860            CREAMER, ROBERT
     ONE MONUMENT SQUARE PORTLAND ME 04101
     F    RICHARD WASHBURN                        PL         RTND   10/14/2010