2005 ME 113

Clarence B. DOW et al.

v.

CARIBOU CHAMBER OF
COMMERCE AND
INDUSTRY et al.

No. ARO–05–174.

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 16, 2005.

Decided: Nov. 3, 2005.

Richard Currier, Currier & Trask, Presque Isle, for the plaintiffs.

Hugh Kirkpatrick, Kirkpatrick Law Offices, Caribou, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Clarence B. Dow and Jeremy M. Williams appeal from a summary judgment entered in the Superior Court (Aroostook County, *Jabar, J.*) in favor of the Caribou Chamber of Commerce and Industry (CCCI) and the City of Caribou on Dow and Williams's complaint for a declaratory judgment regarding the disclosure of various CCCI documents. Dow and Williams contend that the court erred in concluding that the provisions of Maine's Freedom of Access Act (FOAA), 1 M.R.S.A. §§ 401–410 (1989 & Supp.2004), do not apply to Dow and Williams's requests for information from CCCI. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The parties do not dispute the material facts disclosed in the evidence presented to the Superior Court. CCCI is a nonprofit corporation formed in 1999 by private individuals who filed articles of incorporation with the Secretary of State pursuant to 13–B M.R.S.A. § 403 (1981 & Supp.2004). The goals of CCCI are to promote local business development, job creation and job retention, and tourism, and to increase the City's tax base. The creation of CCCI merged the functions of the former Caribou Chamber of Commerce (CCC) and the former Caribou Development Corporation (CDC). As a result of the merger, many of CDC's assets were transferred to CCCI, including the City's development fund, a fund created by tax revenue and government funds from the City for economic development initiatives.

[¶ 3] Between 1998 and 2001, the City appropriated funds to CCCI that constituted at least sixty percent of CCCI's total revenue for those years. To obtain these grant funds, CCCI applied to the City annually, using the same process that any other outside entity seeking money from the City would use. The remaining por-

tion of CCCI's annual budget is derived from sources other than the City. CCCI administers the City's development fund revolving loan program, at no charge to the City, which is a major reason for the City's annual appropriation to CCCI.

[¶ 4] The articles of incorporation of CCCI provide that its Board of Directors be composed of between eight and fifteen members. In accordance with CCCI's current bylaws, there is an eleven-member Board. Two of these Board members are ex officio members, one being the City Manager or Community Development Director for the City, and the other being a City Council member. Although the two ex officio members do have full voting rights with CCCI, they do not count in determining a quorum of the members.

[¶ 5] From July of 2001 to August of 2002, Williams, and later both Dow and Williams, requested, in a series of letters to CCCI, the disclosure of various documents, including CCCI minutes, financial statements, proposed budgets, audit reports, bylaws, articles of incorporation, credit reports, reports on expenditures, loan approval documents, tax-exempt status documents, treasurer's reports, confidentiality statements, and loan committee minutes. CCCI provided Williams with a copy of its articles of incorporation, but denied each of Dow and Williams's other requests for disclosure.

[¶ 6] In February of 2003, Dow and Williams filed a complaint in the Superior Court against CCCI and the City of Caribou seeking a declaratory judgment that the documents they requested from CCCI were subject to disclosure pursuant to FOAA. Following discovery, both parties moved for summary judgment.

[¶ 7] In March of 2005, the court entered a summary judgment in favor of CCCI, and denied Dow and Williams's motion for a summary judgment. The court conclud-

ed that CCCI is a private entity and not a public agency or political subdivision, and that its activities and records therefore fall outside the purview of FOAA's disclosure requirements. Dow and Williams then filed this appeal.

## II. DISCUSSION

[¶ 8] Dow and Williams contend that the court erred in concluding that CCCI is a private entity and therefore not subject to the provisions of FOAA. In reviewing the grant of a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party—in this case, Dow and Williams—to determine "whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law." *Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844; M.R. Civ. P. 56. The parties agree as to the underlying facts of the present matter; the dispute instead involves whether FOAA applies to the proceedings and records of CCCI. The interpretation of FOAA is a matter of law that we review de novo. *Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 10, 871 A.2d 523, 527.

[¶ 9] "The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public." *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857, 861; *see also Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 43, 770 A.2d 574, 587. To promote such objectives, FOAA must be liberally construed. 1 M.R.S.A. § 401 (1989); *Town of Burlington*, 2001 ME 59, ¶ 13, 769 A.2d at 861. Thus, "[t]he burden of proof is on the agency or political subdivision to establish just and proper cause for the denial of a

FOAA request." *Town of Burlington*, 2001 ME 59, ¶ 13, 769 A.2d at 861.

[¶ 10] The provisions of FOAA mandate disclosure with regard to both public records and public proceedings. 1 M.R.S.A. §§ 401, 403, 408 (1989 & Supp. 2004). Public records are subject to disclosure pursuant to 1 M.R.S.A. § 408, which states that "every person has the right to inspect and copy any public record during the regular business hours of the agency or official having custody of the public record within a reasonable period of time after making a request to inspect or copy the public record." 1 M.R.S.A. § 408(1) (Supp.2004). The statute defines "public records" as:

> The term "public records": means any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained ... that is in the possession or custody of an agency or public official of this State or any of its political subdivisions ... and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business ....

1 M.R.S.A. § 402(3) (Supp.2004). Thus, "[t]o determine whether the requested documents are public records we first look to whether [CCCI] is an agency or political subdivision." *Town of Burlington*, 2001 ME 59, ¶ 14, 769 A.2d at 861–62. The trial court based its entry of a summary judgment on its conclusion that CCCI is a private entity.[1]

[¶ 11] Title 1 M.R.S.A. § 403 requires that "all public proceedings shall be open to the public, any person shall be permitted to attend any public proceeding and any record or minutes of such proceedings that is required by law shall be made promptly and shall be open to public inspection." 1 M.R.S.A. § 403 (1989). "[P]ublic proceedings" are further defined as "the transactions of any functions affecting any or all citizens of the State by ... [a]ny board, commission, agency or authority of any county, municipality, school district or any regional or other political or administrative subdivision." 1 M.R.S.A. § 402(2)(C) (Supp.2004). Thus, the disclosure of public proceedings information also depends on the public status of the entity from which the documents are requested.

[¶ 12] When evaluating whether an entity qualifies as a public agency or political subdivision, we have "looked to the function that the entity performs." *Town of Burlington*, 2001 ME 59, ¶ 16, 769 A.2d at 862–63. In doing so, we consider four factors: "(1) whether the entity is performing a governmental function; (2) whether the funding of the entity is governmental; (3) the extent of governmental involvement or control; and (4) whether the entity was created by private or legislative action." *Id.* Although these factors should be "considered and weighed," an entity need not strictly conform to each of the factors. *Id.*

[¶ 13] In *Town of Burlington*, for example, we considered whether a Hospital Administrative District (HAD) qualified as an agency or political subdivision, and thus whether its records were subject to disclosure pursuant to FOAA. *Id.* ¶ 2, 769 A.2d at 859. We evaluated the HAD pursuant to the four factors and concluded that it indeed functioned as a political subdivision because it provided a governmental health care function; it had the power to tax and

---

1. The parties also dispute whether the requested documents otherwise qualify as "public records" within the meaning of 1 M.R.S.A. § 402(3) (Supp.2004).

issue bonds, even though tax funds were not being used to finance it at that time; its management staff was determined by elected citizens of the town; and it was created as an entity by an act of the Maine Legislature. *Id.* ¶ 17, 769 A.2d at 863; *see also Great N. Paper, Inc.,* 2001 ME 68, ¶¶ 56, 59, 770 A.2d at 590, 591 (concluding that the Penobscot Tribe qualifies as a municipal agency, and therefore that its public records are subject to disclosure pursuant to FOAA).

[¶ 14] In this case, as to the first factor, Dow and Williams argue that, in performing an economic development function for the City—including the administration of the development fund revolving loan, the promotion of tourism, job creation and retention, and local business development, as well as making efforts to increase the City's tax base—CCCI does act as a governmental entity. That a private corporation performs services that also benefit the City, however, should not, by itself, render that corporation a public entity. Indeed, Chambers of Commerce are traditionally nongovernmental entities that are in the business of promoting economic development. As the trial court aptly noted, "[w]hile it may be in the interest of the City to promote economic development, it is also in the interests of the members of CCCI, many of whom are business owners and none of whom are governmental bodies, to do so."

[¶ 15] The second factor requires us to examine the extent to which CCCI's funding is governmental. Although Dow and Williams correctly point out that at least sixty percent of CCCI's total revenue comes from City appropriations, the City provides such funding to CCCI on an annual basis only after considering CCCI's requests for funding equally with all other requests. The fact that an entity receives a substantial amount of governmental

funding is also not sufficient to render that entity a public agency. If this were so, any private organization that received grant money, for example, could arguably be deemed a public agency. Further, CCCI does not have the statutory funding and taxing authority that had been vested in the HAD in *Town of Burlington,* and the City is free to reduce, or cease altogether, the annual funding provided to CCCI. In addition, in contrast to the facts of *Town of Burlington,* the City could never become obligated to pay any debts incurred by CCCI. The trial court did not err when it determined that the City funding received by CCCI does not render CCCI a public agency.

[¶ 16] The third factor requires us to consider the extent of City involvement in and control over CCCI. Dow and Williams argue that CCCI is controlled by the City by means of the sixty percent funding the City affords CCCI, and the resulting pressure CCCI must feel to comply with the City's wishes. Dow and Williams also rely on the fact that CCCI maintains two ex officio positions for City officials who have full voting rights. As CCCI points out, however, the two ex officio members of its Board of Directors are not counted toward a quorum, and only when a quorum is present are the ex officio members permitted to vote. Furthermore, the two ex officio members form only a small minority of the eleven-member Board and, even when permitted to vote, cannot control any decisions of the Board. The trial court correctly concluded that the City's ability to assert control over the votes and actions of CCCI is very limited.

[¶ 17] The fourth and final factor to be examined is whether CCCI was created by private action or by public legislative action. There is no dispute that CCCI was created by the private action of local individuals. Dow and Williams argue, howev-

er, that it was nevertheless created in an effort to merge two prior entities (CCC and CDC) that also performed public functions. We are not persuaded by their argument. Both CCC and CDC were private corporations. Moreover, the fact that CCCI administers some of the City's public loan funds does not mean that CCCI is deemed to have been created by legislative action. The *Town of Burlington* is distinguishable on this point because, in that case, the HAD was created by operation of statute. The fact that CCCI was created by private action is abundantly clear.

[¶ 18] Based on the four factors, the Superior Court correctly concluded that CCCI is not a public agency or political subdivision and is therefore not subject to the disclosure mandates of FOAA. Because CCCI is neither a public agency, nor a political subdivision, we need not consider whether its records otherwise fall within the definition of public records.

The entry is:

Judgment affirmed.