MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2014 ME 123
Docket:       Ken-14-52
Submitted
 On Briefs:   September 23, 2014
Decided:      November 4, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and
              HJELM, JJ.

GINA TURCOTTE

v.

HUMANE SOCIETY WATERVILLE AREA

SILVER, J.

[¶1]    Gina Turcotte appeals from an order of the Superior Court (Kennebec County, *Murphy, J.*) dismissing her complaint against the Humane Society Waterville Area (HSWA) for failure to state a claim upon which relief can be granted.  Turcotte's complaint sought, pursuant to Maine's Freedom of Access Act, 1 M.R.S. § 400 *et seq.* (2013), to compel HSWA to permit inspection of its records.  Because we conclude that HSWA is not a public agency for purposes of FOAA, we affirm the dismissal of Turcotte's complaint.

2

## I. BACKGROUND

[¶2]   On September 18, 2013, Turcotte filed a *pro se* complaint for injunctive relief seeking the release of HSWA records relating to a certain cat.[1] The complaint alleged, in relevant part, that Turcotte "is a private woman who has a right to review and receive public documents in the custody of public benefit, non-profit agencies" and that HSWA "is a public benefit, non-profit agency supported by 95% public donations for the purpose of reuniting, sheltering and re-homing lost and abandoned animals."   The complaint further alleged that Turcotte had submitted a request for documents to HSWA pursuant to FOAA and that HSWA "wrongfully withheld public records requested by Claimant by failing to comply with the statutory time limit for the processing of FOAA requests."

[¶3]  On December 16, 2013, HSWA filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted, asserting that "HSWA—being a private corporation—is not subject to the disclosure provisions of [FOAA]."   In her opposition to HSWA's motion, Turcotte argued that "HSWA is the functional equivalent of a public agency" and included

---

[1]  Turcotte asserts that she lost her cat in September 2012, and that she repeatedly contacted HSWA to report the cat missing and to inquire whether anyone had surrendered the cat to the shelter.  She further asserts that a Waterville resident found the cat and turned it over to HSWA in November 2012, but HSWA never contacted Turcotte.  Turcotte only learned that the cat had been found when she saw a photo of it posted on HSWA's Facebook page on January 4, 2013, with a caption announcing the cat's adoption.  HSWA has evidently already successfully defended a civil action in which Turcotte sought to have the cat returned to her.  The factual details of this underlying dispute are not relevant to this appeal, which concerns only Turcotte's FOAA request.

several exhibits pertaining to HSWA's contracts with twenty-three cities and towns and HSWA's tax status as an "organization that normally receives a substantial part of its support from a governmental unit or from the general public." HSWA's contract with the City of Waterville, which Turcotte attached as an exhibit to her opposition to the motion to dismiss, provides, in part:

> By statute, ALL towns are either required to maintain an animal shelter or otherwise provide such services with regard to stray domestic animals.

> The SHELTER is hereby employed and authorized to act as an animal shelter and is equipped to provide such services in compliance with statutory requirements. The SHELTER will provide food, water, shelter, medical care, and/or any other humane treatment for such domestic animals while they are in possession of the SHELTER.

[¶4] On January 20, 2014, the court issued an order dismissing Turcotte's complaint with prejudice, concluding that HSWA "is not subject to 1 M.R.S. [§] 400 *et seq.*" Turcotte appealed.

## II. DISCUSSION

[¶5] "We review de novo the legal sufficiency of a complaint when it has been challenged by a motion to dismiss." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). In doing so, we view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory," *id.* (quotation marks omitted), and

4

"we take the material allegations of [the] complaint as though they were admitted."[2] *In re Austin T.*, 2006 ME 28, ¶ 6, 898 A.2d 946.

[¶6] Pursuant to FOAA, "a person has the right to inspect and copy any public record . . . within a reasonable time of making the request to inspect or copy the public record." 1 M.R.S. § 408-A. "Public records" means

> any written, printed or graphic matter or any mechanical or electronic data compilation . . . that is in the possession or custody of an agency or public official of this State or any of its political subdivisions . . . and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business.

1 M.R.S. § 402(3). When evaluating whether an entity qualifies as a public agency or political subdivision for purposes of FOAA, we look to the function that the entity performs. *Dow v. Caribou Chamber of Commerce and Indus.*, 2005 ME 113, ¶ 12, 884 A.2d 667. We consider four factors in conducting this analysis: "(1) whether the entity is performing a governmental function; (2) whether the funding of the entity is governmental; (3) the extent of governmental involvement or control; and (4) whether the entity was created by

---

2 As part of her opposition to HSWA's motion to dismiss, Turcotte filed a number of extrinsic documents, which we consider here. We need not reach the question of whether these materials may properly be considered in the context of a motion to dismiss a complaint for failure to state a claim, *see, e.g.*, *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, because even if they are properly considered, the complaint as supplemented by the attachments is insufficient to support Turcotte's claim.

private or legislative action." *Id.* (quoting *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 16, 769 A.2d 857). We address each factor in turn.

[¶7] First, we consider whether HSWA performs a governmental function. HSWA is contractually obligated to provide food, shelter, and medical services to stray animals, which benefits each of the municipalities HSWA serves. Other jurisdictions have concluded that humane societies serve governmental functions; they have done so, however, primarily where the societies and their employees are authorized by statute to take actions such as enforcing animal welfare laws and confiscating abused or neglected animals. *See, e.g., Daskalea v. Washington Humane Soc'y*, 480 F.Supp.2d 16, 26 (D.D.C. 2007) (humane society is a government actor for purposes of a section 1983 claim because it has statutory authority to prosecute violations of animal cruelty laws, obtain warrants to search private homes, collect fines, and seize any animal to protect it from abuse or neglect); *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1208 (9th Cir. 2002) (humane society and its officers are state actors for purposes of section 1983 because humane society was created by statute and has the authority to investigate animal cruelty, impound animals, place liens on property, and file criminal charges); *Champagne v. Spokane Humane Soc'y*, 737 P.2d 1279, 1282 (Wash. Ct. App. 1987) (privately incorporated humane society essentially acts as

6

public entity where city has contractually delegated to it the authority to enforce animal control ordinance).

[¶8]  Here, the City is required by statute to select a shelter to fulfill the function of sheltering stray animals.  7 M.R.S. § 3949 (2013).  Unlike those in other jurisdictions, however, shelter employees in Maine have no statutory authority to enforce animal welfare regulations; only animal control officers may do so.[3]  *Id.*; 7 M.R.S. § 3947 (2013).  That an entity provides services under a contract with a public agency is insufficient, on its own, to establish that it performs a governmental function.  *See Town of Burlington*, 2001 ME 59, ¶ 23, 769 A.2d 857 (Alexander, J., concurring).  Thus, HSWA does not perform a traditional governmental function.

[¶9]  Second, we consider whether HSWA is governmentally funded.  Although HSWA is funded in part by its contracts with area cities and towns, it receives the bulk of its funding from private donations.  This factor counsels against the conclusion that HSWA is a public agency subject to FOAA.

[¶10]  Third, we examine the extent of any governmental involvement and control.  HSWA is subject to certain licensing requirements and is bound to abide

---

[3]  A shelter employee may serve as an animal control officer, but only if that person independently fulfills the requirements to do so.  7 M.R.S. § 3947 (2013).

by the terms of its contract with the city. Such limited interaction does not amount to significant governmental involvement in or control over HSWA.

[¶11] Fourth, HSWA was not created by statute. This final factor weighs in favor of concluding that HSWA is not a public agency.

[¶12] Our review of the four factors leads us to conclude that, although HSWA performs a function that both benefits the public and assists municipalities in fulfilling their statutory obligation to arrange for shelter services to be provided for the area, it is not a public agency subject to the requirements of FOAA. Even accepting all of the factual allegations in the complaint as true, Turcotte has not stated a claim that entitles her to relief on her claim to compel HSWA to provide her access to its records.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Gina Turcotte, appellant pro se

The Humane Society Waterville Area did not file a brief