DAVID LEON FREDERICK, APPELLEE, CROSS-APPELLEE, AND
CROSS-APPELLANT, V. CITY OF FALLS CITY, A CITY AND
POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA,
APPELLEE AND CROSS-APPELLANT, AND FALLS CITY
ECONOMIC DEVELOPMENT AND GROWTH
ENTERPRISE, INC., APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed January 16, 2015.    No. S-13-275.

1. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory inter-
pretation require an appellate court to reach a conclusion independent of the
decision made by the court below.

2. **Mandamus: Proof.** A party seeking a writ of mandamus under Neb. Rev. Stat.
§ 84-712.03 (Reissue 2008) has the burden to satisfy three elements: (1) that the
requesting party is a citizen of the state or other person interested in the exami-
nation of the public records, (2) that the documents sought are public records as
defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) that the request-
ing party has been denied access to the public records as guaranteed by Neb. Rev.
Stat. § 84-712 (Cum. Supp. 2012).

3. **Administrative Law: Pretrial Procedure: Records.** A four-part functional
equivalency test is the appropriate analytical model for determining whether a
private entity which has an ongoing relationship with a governmental entity can
be considered an agency, branch, or department of such governmental entity
within the meaning of Neb. Rev. Stat. § 84-712.01(1) (Reissue 2014), such that
its records are subject to disclosure upon request under Nebraska's public records
laws. The factors to be considered in applying this test are (1) whether the
private entity performs a governmental function, (2) the level of governmental
funding of the private entity, (3) the extent of government involvement with or
regulation of the private entity, and (4) whether the private entity was created by
the government.

4. **Pretrial Procedure: Evidence: Proof.** In applying the functional equivalency
test to determine whether a private entity is the equivalent of a public agency,
branch, or department, it is not necessary that an entity strictly conform to
each factor, but the factors should be considered and weighed on a case-by-
case basis.

Appeal from the District Court for Richardson County:
DANIEL E. BRYAN, JR., Judge. Vacated and reversed, and
remanded with directions.

Jerald L. Rauterkus and Bonnie M. Boryca, of Erickson &
Sederstrom, P.C., L.L.O., for appellant.

Michael R. Dunn, of Halbert, Dunn & Halbert, L.L.C., for appellee City of Falls City.

Stephen D. Mossman, J.L. Spray, and Joshua E. Dethlefsen, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellee David Leon Frederick.

David J.A. Bargen, of Rembolt Ludtke, L.L.P., for amicus curiae League of Nebraska Municipalities.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

The issue presented in this appeal is whether certain documents in the possession of a private corporation which has an ongoing contractual relationship with a city are "public records" within the meaning of Neb. Rev. Stat. §§ 84-712 (Cum. Supp. 2012) and 84-712.01 (Reissue 2014). Falls City Economic Development and Growth Enterprise, Inc. (EDGE), a Nebraska nonprofit corporation, provides economic development services to the City of Falls City, Nebraska, and other entities. A Nebraska citizen asked EDGE to produce documents relating to a specific economic development project, and EDGE denied the request on the ground that the requested documents were not public records as defined by § 84-712.01(1). The citizen then brought this action for a writ of mandamus pursuant to Neb. Rev. Stat. § 84-712.03 (Reissue 2008) to compel production of the requested documents. Except for certain documents which it determined to be privileged, the district court granted the writ. EDGE appealed, and Falls City cross-appealed, aligning itself with EDGE. The citizen also cross-appealed, contending the district court erred in not requiring production of all of the requested documents. We vacate and reverse the writ of mandamus and the order awarding attorney fees, and remand the cause with directions to dismiss.

## I. BACKGROUND

### 1. Parties

David Leon Frederick is a Nebraska citizen and a resident of Richardson County, Nebraska. EDGE is a mutual benefit corporation incorporated under the Nebraska Nonprofit Corporation Act[1] in 2006 by eight private individuals, none of whom are employed by Falls City. According to its articles of incorporation, EDGE was formed "[t]o operate as a non-profit corporation for the purpose of encouraging economic development and growth and improving business conditions" in Falls City, Nebraska, and the surrounding area, and to "engage in any lawful activity permitted under the Nebraska Nonprofit Corporation Act." EDGE employs an executive director and one part-time assistant. Neither are employees of Falls City.

EDGE is governed by a 21-member board of directors, which includes the mayor of Falls City and one member of the city council. The Falls City administrator is an ex-officio member of EDGE's board. Each director is required to sign a confidentiality agreement which provides that he or she

> shall keep confidential all information obtained as a result of the performance of duties as a Director of EDGE, including but not limited to all information obtained regarding the identity or characteristics of prospects, contracts, terms of any agreements, terms or existence of any proposals, financial matters, and the subject matter and contents of any Board or Committee meetings.

Directors do not have access to all information maintained by the corporation.

EDGE receives both public and private funding. During the first 9 months of 2012, it received $85,840.23 from Falls City, $20,000 from Richardson County, and $77,215 from private entities.

EDGE performs services for Falls City and Richardson County which include hosting, communicating with, and

---

[1] See Neb. Rev. Stat. §§ 21-1901 to 21-19,177 (Reissue 2012 & Cum. Supp. 2014).

negotiating with business development prospects; encouraging development activities of existing and new businesses; and promoting the image of the city and county regionally and nationally. EDGE also performs services that benefit its private investors, such as workforce training workshops, hosting business prospects, and arranging meetings between investors and business prospects and leaders from other communities.

EDGE and Falls City have entered into various agreements, including a memorandum of understanding dated December 19, 2011. This document recites that Falls City and EDGE "desire to work together to implement an aggressive, targeted approach to creating a positive image of Falls City and marketing the community as a preferred business location that will generate new wealth and create quality employment opportunities." This document defines the relationship between Falls City and EDGE as serving

> the purpose of undertaking the planning and implementation of the City's economic development marketing and new business development recruitment, the retention and expansion of existing businesses and entrepreneurial development as well as other economic development services designed to strengthen the competitiveness of the business climate and expand economic development in the City.

The memorandum of understanding specifies the services which EDGE agreed to provide in furtherance of this objective and is revocable by either party giving 60 days' written notice.

EDGE maintains a separate Web site which can be accessed through a link on the Falls City Web site. It retains its own accountant for preparation of payroll, taxes, and financial statements. EDGE's offices are in a building located in Falls City which is not part of any municipal or governmental building. In addition to its activities within Falls City, EDGE has been involved with economic development projects outside the city limits, including the Missouri River bridge at Rulo, Nebraska, and a wind farm.

### 2. CGB Development Project

CGB Enterprises, Inc. (CGB), a national grain processing and transportation company, contacted EDGE in April 2012 regarding the proposed development of a large grain terminal and transportation facility on a site in Richardson County, Nebraska. This site is located near an existing grain elevator co-owned by Frederick.

According to EDGE's executive director, EDGE's investors supported the development and encouraged EDGE to "provide assistance to CGB as much as possible." This included serving as a liaison between CGB and various local, state, and private business entities. EDGE signed a confidentiality agreement with CGB to protect "confidential and proprietary information" with respect to the project.

### 3. Public Records Requests

On August 29, 2012, Frederick sent a public records request to the Falls City administrator. The request sought records in the physical custody of Falls City and EDGE relating to CGB. The administrator responded with a letter providing the requested documents which were in the physical custody of Falls City. He also sent a copy of his letter and the public records request to EDGE's executive director. On September 7, EDGE's president told the Falls City administrator that EDGE had already declined a similar public records request which it had received directly. On September 24, Falls City asked EDGE to provide the city with all public records concerning the CGB project which were the subject of the request. EDGE denied this request on the basis that it was not a public entity and that its records were not public records.

### 4. Mandamus Proceeding

Frederick subsequently filed a verified complaint and motion for a writ of mandamus, naming only Falls City as the respondent. The court issued an alternative writ of mandamus directing Falls City to either produce the requested records or file an answer to the verified complaint and show cause why it did not produce them. Falls City filed an answer in which it denied that records in the possession of EDGE were public

records and alleged that it did not have access to such records. Falls City further alleged that it had produced all requested records which were in its possession and that Frederick had failed to join EDGE as a necessary party.

After conducting an evidentiary hearing, the district court found that Falls City had delegated its economic development goals to EDGE and that therefore, the requested records in the possession of EDGE were public records subject to disclosure. The court also determined that EDGE was a necessary party to the mandamus proceeding and ordered that EDGE be joined as a party and be given an opportunity to appear and "show cause why [it] should not be held in contempt." The court stated that no further evidence would be received from Falls City and that the requested records "are public records and should be disclosed to [Frederick], subject to [EDGE's] opportunity to show cause why they are exempt from public disclosure."

Frederick filed an amended verified complaint joining EDGE as a party, and the court issued an alternative writ to Falls City and EDGE. EDGE filed an answer asserting several defenses, including (1) that the requested documents were not public records and (2) that they were exempt from disclosure under Neb. Rev. Stat. § 84-712.05 (Cum. Supp. 2012). EDGE also alleged that "its economic development activities do not constitute a government function" and that "there has been no delegation of a government function to EDGE by [Falls City]."

After conducting another evidentiary hearing, the district court entered an order determining the documents at issue were public records subject to disclosure. Applying the test utilized by this court in *Evertson v. City of Kimball*,[2] the court determined that Falls City had delegated its "economic development goals" to EDGE, that EDGE had prepared the records under this delegation of authority, that the City was entitled to possess the materials to monitor the performance of EDGE, and that the records were used to make a decision affecting the public interest. Based upon its in camera review, the court

_____

[2] *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009).

determined that some of the requested records were exempt from disclosure pursuant to § 84-712.05(3) and (4) or the attorney-client privilege.

In a subsequent order entered on March 6, 2013, the district court ordered Falls City and EDGE, jointly and severally, to pay Frederick's attorney fees and costs in the amount of $17,109.59, pursuant to Neb. Rev. Stat. § 84-712.07 (Reissue 2014). The court also stayed the issuance of a writ of mandamus pending appeal, conditioned upon the filing of a supersedeas bond, which was subsequently filed. EDGE perfected this timely appeal. We moved the appeal to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

## II. ASSIGNMENTS OF ERROR

EDGE assigns, restated, that the district court erred in (1) holding that its records are public records subject to disclosure pursuant to § 84-712 and (2) holding EDGE jointly and severally liable for attorney fees and costs in the amount of $17,109.59.

On cross-appeal, Falls City assigns, restated and consolidated, that the district court erred in finding (1) that there was a clear duty existing on the part of Falls City to provide the records of EDGE; (2) that Falls City, through a delegation of authority to perform a governmental function, contracted with a private party to carry out a governmental function; (3) that EDGE prepared records under Falls City's delegation of authority; (4) that Falls City was entitled to possess the materials to monitor EDGE's performance; (5) that the records of EDGE are used by Falls City to make a decision affecting public interest; and (6) that Falls City was jointly and severally liable for attorney fees and costs in the amount of $17,109.59. Falls City also assigns error to the district court's initial determination that the records in question were public records, because EDGE had not been made a party to the case at the time of that determination.

---

[3] See Neb. Rev. Stat. § 24-1106(2) (Reissue 2008).

On cross-appeal, Frederick assigns, restated and consolidated, that the district court erred by finding EDGE did not waive the statutory disclosure exemptions by failing to follow the procedures set forth in Neb. Rev. Stat. § 84-712.04 (Reissue 2014).

## III. STANDARD OF REVIEW

[1] Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[4]

## IV. ANALYSIS

### 1. Legal Principles

[2] This case involves a citizen's statutory right, as articulated in § 84-712(1), to examine public records. In seeking a writ of mandamus to enforce this right under § 84-712.03, Frederick had the burden to satisfy three elements: (1) that he is a citizen of the state or other person interested in the examination of the public records, (2) that the documents sought are public records as defined by § 84-712.01, and (3) that he has been denied access to the public records as guaranteed by § 84-712.[5]

The disputed issue in this case involves the second element, i.e., whether the records Frederick requested from EDGE are "public records" as defined by § 84-712.01(1). According to that statute, public records are "all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing."[6] The fact that the requested documents are in the possession of a private entity is not determinative. We held in *Evertson* that the phrase "of or belonging

---

[4] *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

[5] See, *Evertson, supra* note 2; *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998).

[6] § 84-712.01(1).

to" in § 84-712.01(1) should be construed liberally to include documents or records that a public body is entitled to possess, regardless of whether the public body actually has possession of the documents.[7] We reasoned that the public's right of access should not depend on where the records are physically located.

But we also recognized in *Evertson* that public records laws should not permit scrutiny of all of a private party's records simply because it contracts with a government entity to provide services.[8] In *Evertson*, a city's mayor commissioned an investigation in response to complaints of racial profiling by a city police officer. The mayor retained a private attorney from another state who hired a private investigative firm to assist him. Based on a verbal report of the results of the investigation, the city terminated the police officer's employment. Two citizens sought disclosure of a written report in the possession of the investigative firm, and a district court held that the document was a public record which must be disclosed, even though the city never physically possessed it.

On appeal, we examined case law from other jurisdictions addressing when documents in the possession of a private party constitute public records. We recognized that many courts have adopted functional equivalency tests which focus on whether the documents are in the possession of a "hybrid public/private entity: an entity created by, funded by, and regulated by the public body."[9] We noted that such tests "appear appropriate when a private entity performs an ongoing government function."[10] But recognizing that the facts in *Evertson* did not involve an ongoing relationship between the city and the private entity, we observed that a functional equivalency test would not be appropriate because "requiring citizens to show that a private party functions as a hybrid government entity creates a loophole that would often allow public bodies

---

[7] *Evertson*, s*upra* note 2.

[8] *Id*.

[9] *Id*. at 11, 767 N.W.2d at 761.

[10] *Id*.

to evade public records laws."[11] So instead of utilizing a functional equivalency test in *Evertson*, we fashioned a test adapted from Ohio law[12] and held that requested materials in a private party's possession are public records if: (1) The public body, through a delegation of its authority to perform a government function, contracted with a private party to carry out the government function; (2) the private party prepared the records under the public body's delegation of authority; (3) the public body was entitled to possess the materials to monitor the private party's performance; and (4) the records are used to make a decision affecting public interest.[13]

*Evertson* involved a document prepared in the course of a single investigation which the city contracted with a private entity to perform, and the test we applied focused on the requested document. But in this case, Frederick sought multiple documents prepared over a period of time by an entity which had an ongoing relationship with Falls City. He argues all of the documents in the possession of EDGE relating to the CGB project are public records because EDGE is a hybrid public/private entity in that it functions as the economic development "agency," "branch," or "department" of Falls City within the meaning of § 84-712.01(1). As we noted in *Evertson*, in similar factual circumstances where there is an ongoing relationship between the public body and the private entity, other courts have applied a functional equivalency test.

Courts in Connecticut, Tennessee, Ohio, Oregon, and Maine utilize a similar test to determine whether a private entity is the functional equivalent of a public or governmental agency within the meaning of the public records laws of those states.[14]

---

[11] *Id*.

[12] See *State ex rel. v. Krings*, 93 Ohio St. 3d 654, 758 N.E.2d 1135 (2001).

[13] *Evertson, supra* note 2.

[14] *State ex rel. Oriana House v. Montgomery*, 110 Ohio St. 3d 456, 854 N.E.2d 193 (2006); *Dow v. CCCI*, 884 A.2d 667 (Me. 2005); *Memphis Publishing v. Cherokee Children*, 87 S.W.3d 67 (Tenn. 2002); *Marks v. McKenzie High School Fact-Finding Team*, 319 Or. 451, 878 P.2d 417 (1994); *Connecticut Humane Soc. v. FOIC*, 218 Conn. 757, 591 A.2d 395 (1991).

As originally formulated by the Supreme Court of Connecticut, the functional equivalency test considers (1) whether the private entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the private entity was created by the government.[15] This test is applied on a case-by-case basis, with no single factor being dispositive.[16] Whether an entity meets the statutory definition of a public or governmental agency under a functional equivalency test presents a question of law.[17]

[3] We conclude that the four-part functional equivalency approach is the appropriate analytical model for determining whether a private entity which has an ongoing relationship with a governmental entity can be considered an agency, branch, or department of such governmental entity within the meaning of § 84-712.01(1), such that its records are subject to disclosure upon request under Nebraska's public records laws. The *Evertson* test is better suited to documents prepared in the course of an isolated transaction between a public body and a private entity. Utilizing separate tests, depending upon whether the entity's relationship with government is ongoing as in this case or limited to a single transaction as in *Evertson*, is consistent with the statutory directive that our public records law be "liberally construed" so that citizens "shall have the full right to know of and have full access to information on the public finances of the government and the public bodies and entities created to serve them."[18] We also note that Ohio, the state from which we adopted the *Evertson* test, applies a functional equivalency test in circumstances involving ongoing relationships between public bodies and private entities.[19]

---

[15] *Board of Trustees v. Freedom of Information Commission*, 181 Conn. 544, 436 A.2d 266 (1980).

[16] *State ex rel. Oriana House, supra* note 14; *Memphis Publishing, supra* note 14; *Marks, supra* note 14; *Connecticut Humane Soc., supra* note 14.

[17] *Connecticut Humane Soc., supra* note 14.

[18] § 84-712.01(3).

[19] *State ex rel. Oriana House, supra* note 14.

## 2. Application to Facts

### (a) Governmental Function

The first factor to be considered in determining whether EDGE is the functional equivalent of a city agency, branch, or department is whether it performs a governmental function. The function at issue here is the promotion of economic development. A Nebraska statute, now codified at Neb. Rev. Stat. § 13-315 (Reissue 2012), authorizes counties, cities, and villages to expend public funds "for the purpose of encouraging immigration, new industries, and investment" and to conduct and carry out a "publicity campaign" for the purposes of "exploiting and advertising the various agricultural, horticultural, manufacturing, commercial, and other resources" of the county, city, or village. The statute caps this expenditure at "four-tenths of one percent of the taxable valuation of the city, village, or county" and further provides that such sum

> may be expended directly by the city, village, or county or may be paid to the chamber of commerce or other commercial organization . . . or local development corporation to be expended for the purposes enumerated in this section under the direction of the board of directors of the organization.[20]

This court upheld the constitutionality of a prior codification of these statutory provisions in *Chase v. County of Douglas*,[21] reasoning that "municipal publicity and the general encouragement of growth and industry [are] public purposes" which "may be accomplished by expending the funds through the private organizations specified in the statute." Based on § 13-315 and our decision in *Chase*, the Nebraska Court of Appeals held that a city's allocation of funds to a chamber of commerce, which in turn transferred the funds to a museum foundation, fell "within the public purpose of the general encouragement of growth and industry."[22]

---

[20] § 13-315.

[21] *Chase v. County of Douglas*, 195 Neb. 838, 846, 241 N.W.2d 334, 339 (1976).

[22] *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 20 Neb. App. 541, 552, 826 N.W.2d 589, 598 (2013).

From this authority, we conclude that promoting economic development is a governmental function. But it is permissive, not mandatory. We find no provision of law requiring a city to engage in promotion of economic development, either directly through its own employees or indirectly through an expenditure of public funds to a private entity such as a chamber of commerce or development corporation.

### (b) Level of Government Funding

EDGE receives approximately 63 percent of its revenue from public sources, including Falls City and Richardson County, with the remainder coming from private sources. In *Dow v. CCCI*,[23] the Maine Supreme Court held that receipt by a private development corporation of at least 60 percent of its annual revenue from a city did not support a conclusion that it was the functional equivalent of a city agency. But in *State v. Beaver Dam Area Development Corp*.,[24] the Wisconsin Supreme Court considered the fact that a development corporation was "almost entirely taxpayer funded" to be a significant factor in its determination that the entity was a "quasi-governmental corporation" subject to state open meetings and public records statutes.

### (c) Extent of Government Involvement or Regulation

The statute which permits a city to expend funds to a private entity engaged in economic development does not require the city to retain control over the specific expenditure of such funds by the entity.[25] To the contrary, it provides that such funds are "to be expended for the purposes enumerated in this section under the direction of the board of the organization."[26] Of the 21 voting members of EDGE's board of directors, two are city officials. The city administrator is an ex-officio

---

[23] *Dow, supra* note 14.

[24] *State v. Beaver Dam Area Development Corp*., 312 Wis. 2d 84, 110, 752 N.W.2d 295, 308 (2008).

[25] § 13-315.

[26] *Id*.

member with no voting powers. All three Falls City represent-atives on the board are subject to confidentiality agreements. Thus, the city has representation on EDGE's board of directors, but not control.[27] EDGE's employees are not employed by Falls City. EDGE maintains its financial records separately from Falls City, and does not occupy city offices.

In contrast, in *Meri-Weather v. Freedom of Info. Com'n*,[28] a nonprofit economic development corporation formed by a city agency was determined to be subject to the control of the city for purposes of the functional equivalency test. There, the city agency appointed a majority of the corporation's board of directors, employed its executive director, and maintained its financial records.

### (d) Creation of Entity

EDGE was incorporated by several private individuals, none of whom were employed by Falls City. In this sense, it is dis-similar to the entity determined to be the functional equivalent of the city in *Meri-Weather*, and similar to the chamber of commerce which the Maine Supreme Court held in *Dow*[29] was not the functional equivalent of the city.

### (e) Resolution

[4] We agree with other courts that in applying the func-tional equivalency test to determine whether a private entity is the equivalent of a public agency, branch, or department, it is not necessary that an entity strictly conform to each factor, but the factors should be considered and weighed on a case-by-case basis.[30] Here, the strongest factor supporting Frederick's argument that EDGE is the functional equiva-lent of a city agency, branch, or department is the fact that it performs a governmental function, i.e., the promotion of economic development. But as we have noted, a city does not

---

[27] See *Dow, supra* note 14.

[28] *Meri-Weather v. Freedom of Info. Com'n*, 47 Conn. Supp. 113, 778 A.2d 1038 (Conn. Super. 2000).

[29] See *Dow, supra* note 14.

[30] See cases cited *supra* note 16.

have a duty or responsibility to promote economic development, it simply has the authority to do so if it chooses. And unlike essential governmental functions such as building and maintaining streets and highways and providing for public health and safety, private entities are free to engage in economic development activities without any involvement of public bodies. Indeed, private entities have their own distinct interests in economic development. As the court noted in *Dow*, "Chambers of Commerce are traditionally nongovernmental entities that are in the business of promoting economic development,"[31] and while it may be in the interest of a city to promote economic development, it is also in the interest of chamber of commerce members who have no relationship to the city.

The fact that EDGE receives 63 percent of its funding from public sources lends some support to Frederick's argument that it is the equivalent of a public agency, branch, or department. But we agree with the observation of the Maine Supreme Court in *Dow* that the fact that a private entity received substantial financial support from public entities is not by itself sufficient to render it a public agency, because if that were so, "any private organization that received grant money, for example, could arguably be deemed a public agency."[32]

The remaining factors lend no support to a determination that EDGE is the functional equivalent of a city agency, branch, or department. EDGE was formed by private parties. Its employees are not Falls City employees, its offices are not housed in city buildings, and its financial and other records are kept separately from those of Falls City. The city does not control EDGE's board.

Weighing the various factors, we conclude as a matter of law that EDGE is not the functional equivalent of an agency, branch, or department of Falls City and that therefore, EDGE's records requested by Frederick are not "public records" as defined by § 84-712.01(1). Because of this determination, we do not reach EDGE's assignment of error with respect

---

[31] *Dow, supra* note 14, 884 A.2d at 671.

[32] *Id.*

to attorney fees or the issues raised in the cross-appeals of Frederick and Falls City. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[33]

## V. CONCLUSION

For the foregoing reasons, we vacate and reverse the writ of mandamus and the order awarding attorney fees to Frederick, and we remand the cause to the district court with directions to dismiss.

VACATED AND REVERSED, AND
REMANDED WITH DIRECTIONS.

---

[33] *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014); *Holdsworth* v. *Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

---

BRADLY BROTHERS, APPELLANT, V. KIMBALL COUNTY
HOSPITAL, DOING BUSINESS AS KIMBALL HEALTH
SERVICES, ET AL., APPELLEES.
___ N.W.2d ___

Filed January 16, 2015.   No. S-13-725.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.